*89 JUSTICE LaVECCHIA
delivered the opinion of the Court.
This appeal concerns the applicability of qualified immunity to a claim brought under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, against a State Police detective named in his individual and official capacity.[1]
Plaintiff Denise Brown filed this NJCRA action claiming that her state constitutional rights were violated in 2008 when the defendant State Police officer accompanied her into her apartment, without a warrant and without her consent, in order to secure the premises while awaiting the issuance of a search warrant. Given the options, Brown had declined to grant consent to search her apartment to the two officers who were present and refused to allow the officers to secure the apartment from outside. The parties agree that there was probable cause to believe that Brown had evidence in her home and, in fact, a search warrant was obtained later that day. The officers were in search of evidence of a burglary for which Brown’s boyfriend was a suspect, and the officers had reason to believe that a stolen locket necklace had been given to Brown.
To determine whether qualified immunity applies here, two inquiries are pertinent: (1) were plaintiffs constitutional rights violated when the officers insisted that plaintiff be accompanied by an officer inside her apartment in order to secure the premises and its contents while awaiting the search warrant, and (2) was the constitutional right being violated clearly established at the time so that any reasonable officer acting competently in the circumstances would have known of the constitutional violation. The second prong of the inquiry shields a law enforcement officer who has engaged in a violation but does so when acting reasonably under color of law. However, if the officer knew, or objectively should have reasonably known, that he was engaged in a violation *90 of a clear constitutional right, then his unreasonable behavior disentitles the officer to immunity from liability for his actions.
In reviewing the actions that took place in 2008, we declare them to be inconsistent with the protections in Article I, Paragraph 7 of our State Constitution. A law enforcement officer, without a warrant and without consent, may not lawfully insist on entering a residence based on an assertion that exigent circumstances require the dwelling to be secured.
However, in light of the context in which these circumstances arose — i.e., the lack of clarity in the law governing the lawful means by which law enforcement may secure a home pending issuance of a warrant and, significantly, that law’s intersection with the law governing the exigent circumstances exception to the warrant requirement — we conclude that defendant did not violate a “clearly established” right when he entered Brown’s home to secure it. Therefore, we hold that qualified immunity applies and that Brown’s claim against the remaining defendant officer was properly dismissed by the trial court.
I.
A.
This matter proceeded to trial. Although the defense of qualified immunity was discussed at various points during the proceedings, the issue was not fully resolved pre-trial because the court sent to the jury disputed factual matters that were relevant to the issue before determining the qualified immunity question. We therefore recite the facts as presented and found at trial.
The events underlying this appeal relate to a State Police investigation of a Cape May County home invasion that occurred in October 2008. According to victims and eyewitnesses, two men with handguns forcibly entered a home, stole jewelry and other belongings, and fled in a blue BMW, hauling away stolen goods in a black drawstring bag.
*91 A few weeks later, on November 12, 2008, plaintiff Denise Brown loaned her blue BMW to her boyfriend, Carlos Thomas. At the time, the State Police suspected that Thomas was involved in the burglary. On that date, officers of the Vineland Police Department conducted a traffic stop of the blue BMW, which Thomas was driving, arrested Thomas for driving with a suspended license, and impounded Brown’s vehicle. Later that day, the State Police charged Thomas in connection with his alleged involvement in the home invasion. The same day, a State Police representative notified Brown of Thomas’s arrest and that the State Police had her vehicle.
The State Police kept Brown’s impounded vehicle at headquarters for the next week while continuing to investigate the Cape May County case. On the evening of November 19, State Police Detective Christian Eskridge obtained a warrant to search Brown’s car. That evening, he telephoned Brown to inform her that her car would be searched. Detective Eskridge offered to drive Brown to the police station after the search was executed so she could retrieve her car.
On November 20, Detective Eskridge searched Brown’s car and found contraband, a gun holster, and other items, including jewelry, linking the car to the home invasion. During the investigation into the burglary, the State Police received a tip that Thomas had given Brown a locket reported as stolen during the break-in. The locket was not among the jewelry found in the search of Brown’s car. As a result, Detective Eskridge determined that the investigation should include a search of Brown’s home.[2]
*92 Detective Eskridge was already scheduled that morning to bring Brown to pick up her car; he decided not to first seek a search warrant but instead to ask Brown if she would consent to a search of her home when he went to pick her up. Detective John Steet of the State Police accompanied him. Detective Eskridge explained that if Brown refused consent, he would then proceed to seek a search warrant, securing the premises in the interim by either preventing Brown from entering the home or allowing her access, accompanied by police, to prevent loss or destruction of evidence.
The detectives arrived at Brown’s apartment at about 10:00 a.m. on November 20. Brown had recently arrived home from work. She encountered Detectives Eskridge and Steet outside her apartment as she exited a neighbor’s apartment, The detectives told Brown that they had received a tip that Thomas had given her a stolen locket and asked if she would consent to a search of her home for the item. She immediately refused and told the officers to obtain a warrant if they wanted to search her apartment. The conversation outside the apartment lasted about fifteen to twenty minutes.
Detective Steet testified that Brown’s refusal to consent after she learned that the detectives were looking for a stolen locket made him fear that Brown would destroy evidence of the locket if she were pei’mitted to enter the apartment alone. To prevent that possibility, the detectives told Brown that she could either remain outside the apartment, which would be secured by the officers from the outside,[3] or enter the apartment accompanied by a police escort. Both detectives testified that their offer to secure the premises in either of those two ways was consistent with State Police training and approved by a supervisor at the State Police who had been contacted.
*93 Brown chose to enter the apartment, and Detective Steet followed her in. Detective Eskridge left to obtain a search warrant. Other State Police officers arrived an hour later. The officers remained in the apartment’s kitchen, with Brown, while awaiting Eskridge’s return from obtaining the warrant from the same Cape May County judge who issued the warrant to search Brown’s car. Because Brown’s apartment was in Cumberland County, it took several hours for Eskridge to obtain the warrant and return.
At about 1:30 p.m., Brown left to report for work and the officers exited with her.[4] At approximately 4:00 p.m., Detective Eskridge, armed with a search warrant, returned and searched the apartment. During the search, the officers found a black drawstring bag — -like the one described by the victims and eyewitnesses to the Cape May County home invasion — but no locket.
B.
Brown commenced the instant matter by filing a complaint in the Law Division against the State of New Jersey, Detectives Steet and Eskridge, and other State Police and Vineland Police Department officers. Among others, Brown advanced an NJCRA claim under N.J.S.A 10:6-2(c), which provides a cause of action *94 for deprivation of “any substantive rights, privileges or immunities secured by the Constitution or laws of this State,” alleging a violation of Article I, Paragraph 7 of the New Jersey Constitution, which guarantees freedom from unreasonable searches and seizures.[5] She sought compensatory and punitive damages, a declaratory judgment that defendants’ conduct violated her rights, and injunctive relief, along with costs and fees. Defendants denied Brown’s allegations and raised qualified immunity as a defense.
Prior to trial, defendants moved for summary judgment, which was granted for certain defendants, including Detective Eskridge; however, the motion for summary judgment was denied as to the State Police and Detective Steet. The trial court reserved decision on the remaining defendants’ qualified immunity defense, determining to allow the jury to resolve underlying material questions of fact, after which the court would resolve remaining questions of law related to the immunity defense.
The jury returned a verdict in favor of defendants, finding that Brown failed to prove that: (1) the State Police lacked a good reason to fear the destruction of evidence before seeking the issuance of a warrant; (2) the State Police and Detective Steet failed “to reconcile ... law enforcement needs with [her] privacy interests”; (3) the State Police restricted her movements by preventing her from leaving her apartment; and (4) the State Police restricted “her movements for an unreasonable period.”
Brown’s motion for a judgment notwithstanding the verdict (JNOV) was denied.
C.
On appeal, the Appellate Division affirmed the trial court’s denial of Brown’s motion for JNOV as to the State Police, but the panel reversed as to whether Detective Steet was entitled to *95 qualified immunity. Brown v. State, 442 N.J.Super. 406, 410-11, 124 A.3d 243 (App. Div. 2015).
The panel concluded that Detective Steet acted unconstitutionally by entering Brown’s home without a warrant because his entry was premised on invalid police-created exigency, namely, the detectives’ disclosure to Brown of the object of their search and their subsequent reliance on her informed refusal of consent. Id. at 417, 427-28, 124 A.3d 243. The panel rejected the argument that Steet’s entry was justified under Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), in which the United States Supreme Court found an officer’s entry into the threshold of a home to monitor a suspect’s movements pending issuance of a search warrant to be reasonable. Brown, supra, 442 N.J.Super. at 421, 124 A.3d 243. Rather, the panel labelled this entry a severe intrusion upon Brown’s constitutional privacy rights unsupported by genuine exigency to justify the action. Ibid. Further, the panel identified the officer’s warrantless entry into Brown’s home as a clear violation of established precedent regarding the protection provided by Article I, Paragraph 7 to privacy rights in a home. Id. at 427, 124 A.3d 243. Determining qualified immunity to be inapplicable, the panel remanded for a determination of damages against Detective Steet. Id. at 427-28, 124 A.3d 243.
The Attorney General filed a petition for certification to this Court, which was granted. 225 N.J. 339, 137 A.3d 1198 (2016). We also granted the motion of the American Civil Liberties Union of New Jersey (ACLU-NJ) for leave to appear as amicus curiae.
II.
A.
The State points to United States Supreme Court precedent in arguing for reversal of the panel’s decision holding that Detective Steet was not entitled to qualified immunity.
In particular, the State contends that this case is analogous to McArthur, which, the State argues, permits police officers who have probable cause to believe that evidence will be found within a *96 home to offer occupants the choice of remaining outside the residence while awaiting a search waiTant or entering the home only with police accompaniment. In support of that legal interpretation, the State points to State v. Wright, where this Court found unlawful an officer’s warrantless entry into the defendant’s apartment at the behest of the defendant’s landlord. 221 N.J. 456, 478-79, 114 A.3d 340 (2015). Still, the Court added in its discussion that the officer could have lawfully “secure[d] the apartment or home from the outside, for a reasonable period of time, if reasonably necessary to avoid any tampering with or destruction of evidence” while awaiting the warrant. Id at 478, 114 A.3d 340 (citing McArthur, supra, 531 U.S. at 334, 121 S.Ct. at 951-52, 148 L.Ed.2d at 849). Further, the State argues that the Appellate Division erred when characterizing this ease as involving impermissible police-created exigency because it arose from reasonable and constitutional police conduct: asking for consent to search, as permitted by Kentucky v. King, 563 U.S. 452, 462, 466, 131 S.Ct. 1849, 1858, 1860, 179 L.Ed.2d 865, 876, 879 (2011). Pointedly, the State does not argue exigent circumstances as the basis for entry into Brown’s home.
In sum, the State argues that Detective Steet is entitled to qualified immunity because, even when viewed in the least favorable light to the State’s argued position, New Jersey precedent does not clearly establish that the detective’s conduct in securing the premises was unconstitutional — in particular, because it was based on “reasonable interpretations of McArthur and King” and was authorized by “current police training.”
B.
Brown seeks affirmance of the Appellate Division judgment finding a violation of her state constitutional rights, and therefore a violation of the NJCRA, because Detective Steet entered her home without a warrant, exigent circumstances, or consent.
Brown fundamentally contends that the State’s reliance on McArthur is unfounded, emphasizing that the McArthur Court recognized that there can be no entry without a showing of *97 exigency. See 531 U.S. at 331, 121 S.Ct. at 950, 148 L.Ed.2d at 847. According to Brown, the State relies on impermissible police-created exigency that cannot justify a warrantless entry of the home. She maintains that exigency arose only after the detectives told Brown of the object of their search and after Brown exercised her constitutional right to refuse consent to the search. Thus, on the issue of qualified immunity, Brown argues that Detective Steet is not entitled to the defense because it is well established that an officer may not effectuate a warrantless entry into a home without genuine exigency and that a refusal of consent does not create exigent circumstances.
As amicus, the ACLU-NJ supports Brown’s position. The ACLU-NJ contends that the State Police lacked sufficient exigency to enter Brown’s home without a warrant and urges this Court not to expand exigent-circumstances law in a case such as this, where a police officer told a person the object of his search and then based a claim of exigency on the person’s constitutional right to refuse to consent to entry of a home. The ACLU-NJ maintains that such a holding would provide ill-intentioned officers with a means by which to circumvent the warrant requirement.
The ACLU-NJ also counters the State’s assertion that McAr-thur permits the detectives’ conduct here. The ACLU-NJ argues that the law enforcement interest in obtaining a stolen locket from a non-suspect’s home is meager when compared to the magnitude of the infringement on Brown’s privacy rights. And, the ACLU-NJ argues that Detective Steet should be denied the defense of qualified immunity due to the unlawfulness of the police conduct in disregarding Brown’s privacy interest in her home, coupled with the disregard of the well-known rules governing warrantless police entry into a home.
III.
A.
The affirmative defense of qualified immunity protects government officials from personal liability for discretionary ac *98 tions taken in the course of their public responsibilities, “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Morillo v. Torres, 222 N.J. 104, 116, 117 A.3d 1206 (2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)). The defense “extends to suits brought under ... the Civil Rights Act, N.J.S.A. 10:6-1 to -2.” Id. at 107-08, 117 A.3d 1206.
This state’s qualified immunity doctrine tracks the federal standard, shielding from liability all public officials except those who are “plainly incompetent or those who knowingly violate the law.” Id. at 118, 117 A.3d 1206 (quoting Connor v. Powell, 162 N.J. 397, 409, 744 A.2d 1158, cert. denied, Badgley v. Connor, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 251 (2000)). To ascertain whether a governmental official, such as Detective Steet, is entitled to qualified immunity requires inquiries into whether: (1) the facts, “[tjaken in the light most favorable to the party asserting the injury[ ] ... show the officer’s conduct violated a constitutional right”; and (2) that constitutional “right was clearly established” at the time that defendant acted. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001); see Schneider v. Simonini, 163 N.J. 336, 354-55, 749 A.2d 336 (2000) (“The ‘clearly established law’ requirement ... obligates a court to judge an official’s conduct based on the state of the law and facts that existed at the time of the alleged statutory or constitutional violation.” (citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987))), cert. denied, 531 U.S. 1146, 121 S.Ct. 1083, 148 L.Ed.2d 959 (2001). Either of the two prongs may be considered first. Morillo, supra, 222 N.J. at 118, 117 A.3d 1206.
B.
Ordinarily, application of the defense of qualified immunity is a legal question for the court rather than the jury; therefore, the defense should be raised and resolved “long before *99 trial.” Schneider, supra, 163 N.J. at 356, 749 A.2d 336 (quoting Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (1991)). Qualified immunity relieves an eligible defendant from the burden of trial. See, e.g., Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009) (noting “the importance of resolving immunity questions at the earliest stage in litigation” (quoting Hunter, supra, 502 U.S. at 227, 112 S.Ct. at 536, 116 L.Ed.2d at 595)).
An exception to that rule arises when the case involves disputed issues of fact. Schneider, supra, 163 N.J. at 359, 749 A.2d 336. In such a circumstance, the case may be submitted to the jury to determine “the who-what-when-where-why type of historical fact issues,” after which the trial judge may incorporate those findings in determining whether qualified immunity applies. Ibid. (internal quotation marks omitted).
C.
In this matter, defendants raised the defense of qualified immunity in connection with their motion for summary judgment, arguing that McArthur applied and provided “the only clearly established, constitutional standard” relevant to the facts. Following argument on the motion, the trial court concluded that a factual dispute existed regarding the circumstances of restricting Brown’s private use of her lavatory and the contested search that took place there when accompanied by a female police officer. The trial court determined to grant the motion for summary judgment for the defendants who were “not present when that ... observation was made in the bathroom,” but denied the motion, as presented, for those officers, including Detective Steet, who were still present in Brown’s home at the time of the lavatory incident. The record does not clearly indicate that the trial court made a ruling as to the legality of the initial entry into Brown’s apartment prior to tidal; however, it is clear that the case proceeded to trial on factual issues also associated with the entry into the apartment.
*100 Ultimately, the question of qualified immunity was determinative at trial. The trial court placed on the verdict sheet four issues related to an application of McArthur to.the facts of this matter, stating its intention to have the jury decide those issues so that the court could “get an idea factually, historically, because of an argument of qualified immunity,” and that once that verdict sheet was returned, the court would “determine the law on the issue of qualified immunity.” The court stated that “the entry and whether or not there was an illegal seizure, temporary as it may have been, pending the warrant, is something I think that we’re going to let the jury determine.” In addition, in determining to charge the jury on McArthur and exigency, the court again stated that if the jurors conclude that the officers “were there and they had a right to be there ... then the case ends ... from the jury’s standpoint.”
The issue of qualified immunity took an unusual route in this matter. In the future, it would be more helpful for proceedings to identify with transparency the reasons for delaying a decision on qualified immunity. Because no motions were made or appeals taken at the time qualified immunity issues were left for the jury, we do not and cannot now weigh in on the propriety of that procedure in light of the facts of this case.
IV.
Here, Brown alleges that the police entry into her apartment violated the right our Constitution bestows on New Jersey-ans “to be secure in them persons, houses, papers, and effects, against unreasonable searches and seizures.” N.J. Const. art. I, ¶ 7. Under that provision, “a warrantless search is presumptively invalid,” State v. Gonzales, 227 N.J. 77, 90, 148 A.3d 407 (2016) (quoting State v. Edmonds, 211 N.J. 117, 130, 47 A.3d 737 (2012)), “unless [the search] falls within one of the few well-delineated exceptions to the warrant requirement,” State v. Maryland, 167 N.J. 471, 482, 771 A.2d 1220 (2001) (alteration in original) (quoting State v. Citarella, 154 N.J. 272, 278, 712 A.2d 1096 (1998); citing *101 Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct 2041, 2043, 36 L.Ed.2d 854, 858 (1973)).
A.
New Jersey law establishes that one exception to the warrant requirement of Article I, Paragraph 7 is a search justified by probable cause and exigent circumstances. The Attorney General does not cite the exigency exception to the warrant requirement as a grounds for the officer’s entry into Brown’s apartment; in fact, the Attorney General has expressly conceded that, on these facts, “the officers could not have relied on exigent circumstances to search Brown’s home while they awaited the warrant.”
Instead, the Attorney General argues that the entry was lawful under United States Supreme Court case law that has specifically addressed the propriety of securing premises from within to preserve evidence while a search warrant was sought.
In a 1984 case, the United States Supreme Court splintered on that pertinent issue. Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). In Segura, supra, police officers had probable cause to believe that they would find drugs in an apartment, but no warrant to conduct a search. Id. at 800, 810, 104 S.Ct. at 3383, 3388, 82 L.Ed.2d at 605, 612. To prevent the loss of the drug evidence, the officers “secure[d] the premises” from within, leading to a nineteen-hour occupation of the vacant apartment. Id. at 800-01, 104 S.Ct. at 3383, 82 L.Ed.2d at 605-06.
Two Justices concluded that, assuming the existence of exigency, “securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.” Id. at 810, 104 S.Ct. at 3388, 82 L.Ed.2d at 612. However,' four Justices concluded that the “prolonged occupation” was unconstitutional because it “inevitably involved scrutiny of a variety of personal effects throughout the apartment” and allowed the officers to “exercise[] complete dominion and control over the apartment and its contents.” Id. at 820-24, 104 *102 S.Ct. at 3393-96, 82 L.Ed.2d at 618-22. Ultimately, Segura did not provide a controlling opinion on whether officers may secure a residence from the inside, or outside, while awaiting a search warrant.
Confusion engendered by Segura was alleviated to some degree by the Supreme Court’s decision in McArthur, supra, 531 U.S. at 331-33, 121 S.Ct. at 950-51, 148 L.Ed.2d at 848-49, which held that a police officer was justified in temporarily preventing a defendant from entering his home until a search warrant issued.
In McArthur, two police officers were at the defendant’s mobile home on a domestic matter when the defendant’s wife suddenly revealed that the defendant had hidden “some dope underneath the couch.” Id. at 329, 121 S.Ct. at 948-49, 148 L.Ed.2d at 846. After one officer requested and was denied consent to search the defendant’s trailer, the other officer left to obtain a search warrant; during that interval, the remaining officer refused to permit McArthur to re-enter his home alone. Id. at 329, 121 S.Ct. at 949, 148 L.Ed.2d at 846. For two hours, McArthur was unable to enter his own home unaccompanied — when he was allowed to enter the trailer to retrieve cigarettes and make a phone call, the officer “stood just inside the door to observe what [McArthur] did.” Id. at 328, 329, 121 S.Ct. at 948, 949, 148 L.Ed.2d at 846.
The Supreme Court concluded that the officer’s conduct in securing the defendant’s home did not violate the Fourth Amendment based on the circumstances, which included: (1) probable cause to believe that the officer would find contraband in McArthur’s home; (2) the officer’s reasonable belief that McArthur, who saw his wife speak to the police upon exiting the teailer, would destroy the contraband if permitted to enter the home alone; (3) reasonable efforts by the officer to balance the need of law enforcement against McArthur’s privacy interest; and (4) a period of restraint that “was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant.” Id. at 331-33, 121 S.Ct. at 950-51, 148 L.Ed.2d at 848-49. Significantly, the Court noted that the officer “stepped inside the trailer’s doorway” to *103 monitor McArthur’s movement only because McArthur chose to enter the home “for his own convenience,” and referred to that restraint as minimally intrusive, especially when compared to a warrantless arrest or search. Id. at 335-36, 121 S.Ct. at 952-53, 148 L.Ed.2d at 850-51.
Again, to the extent that Segura and McArthur can be argued to justify a discrete set of warrantless home entries pending receipt of a requested warrant, they do so specifically in connection with “a plausible claim of specially pressing or urgent law enforcement need, i.e., ‘exigent circumstances.’ ” Id. at 331, 121 S.Ct. at 950, 148 L.Ed.2d at 847. There is, therefore, a necessary overlap between home entries pursuant to McArthur and those pursuant to the exigent circumstances exception to the warrant requirement, which also involves a showing of exigency to justify a home entry. See, e.g., State v. Bolte, 115 N.J. 579, 585-86, 560 A.2d 644 (recognizing that combination of probable cause and exigency “may excuse police from compliance with the warrant requirement”), cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989).
The potential conflation of the two exceptions renders the qualified immunity analysis in this appeal particularly challenging; we therefore hew closely to the Attorney General’s focused reliance on the asserted McArthur justification, and consider how New Jersey courts have addressed the specific circumstances of securing premises during the interval in which a warrant is sought.
B.
In the seven years between the decision in McArthur and the conduct at issue in this case, this Court did not opine on the constitutionality of seizing a home by securing it and preventing all access, or alternatively entering it with the occupant, while awaiting a search warrant.
Appellate court decisions that considered the issue have not advanced a uniform interpretation of the law. Some panels have held that a seizure of a premises from the outside pending a *104 search warrant, even absent exigent circumstances, is permissible. See State v. Josey, 290 N.J.Super. 17, 29, 674 A.2d 996 (App. Div.), certif. denied, 146 N.J. 497, 683 A.2d 200 (1996); State v. DeLane, 207 N.J.Super. 46, 50, 503 A.2d 903 (App. Div. 1986). Other panels have permitted entry into a home to secure evidence to be found therein pending a warrant when coupled with exigent circumstances. See, e.g., State v. Myers, 367 N.J.Super. 32, 36, 39, 813 A.2d 1238 (App. Div. 2003) (upholding seizure of home from within due to likelihood that defendant, who was aware of investigation, would destroy evidence; lack of knowledge of defendant’s whereabouts; and officers’ safety concerns). Finally, at least one trial court within the state has held that officers may enter a home to secure it without any showing of exigency at all, so long as they have probable cause to suspect evidence will be found in the residence. State v. Speid, 256 N.J.Super. 398, 403, 605 A.2d 297 (Law Div. 1992) (“The police may, with probable cause, enter a home to secure it while a search warrant is obtained.” (citing Segura, supra, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599)).
Aside from the pending-warrant issue, however, New Jersey precedent generally regarding entry into a home to preserve evidence was not opaque as of 2008. Warrantless entry by a police officer into a residence was not permitted unless the officer obtained the occupant’s consent or could demonstrate both probable cause and exigent circumstances. See State v. Hutchins, 116 N.J. 457, 463, 561 A.2d 1142 (1989). Likewise, ease law prior to 2008 suggested that the ideal procedure for the officer who lacks exigency would be to secure a home from the outside. See State v. Stott, 171 N.J. 343, 349-51, 360, 794 A.2d 120 (2002); State v. Lewis, 116 N.J. 477, 480, 487-88, 561 A.2d 1153 (1989); State v. De La Paz, 337 N.J.Super. 181, 198, 766 A.2d 820 (App. Div.), certif. denied, 168 N.J. 295, 773 A.2d 1158 (2001). But see State v. Alvarez, 238 N.J.Super. 560, 571, 570 A.2d 459 (App. Div. 1990) (concluding that warrantless entry into hotel room to prevent destruction of evidence was constitutional because, “unlike a private home, the ability of police officers to secure or continue a surveillance of a hotel room poses peculiar risks”).
*105 C.
We have recently touched on issues presented in Segura and McArthur. In 2016, this Court was asked to consider whether a police officer acted unconstitutionally when he entered and searched the absent-defendant’s home at the request of the defendant’s landlord, a third party, who had found contraband in the apartment. Wright, supra, 221 N.J. at 459, 461-62, 114 A.3d 340. That decision focused on the extension of the third-party intervention doctrine to a situation involving a home, and our Court noted that “[t]he proper course under the State and Federal Constitutions” in that circumstance is to rely on the information provided by a third-party to apply for a search warrant and then, “[i]n the time it takes to get the warrant, ... secure the apartment or home from the outside, for a reasonable period of time, if reasonably necessary to avoid any tampering with or destruction of evidence.” Id at 478, 114 A.3d 340 (citing McArthur, supra, 531 U.S. at 334, 121 S.Ct. at 951-52, 148 L.Ed.2d at 849).
Relatedly, we also recently instructed that an officer may not insist on accompanying an individual who seeks to enter his home in order to obtain requested credentials. In State v. Legette, a police officer conducting a Terry[6] investigation asked the detained defendant for identification, stated that he “would have to accompany [the defendant] to his apartment” to retrieve it, and then entered the defendant’s apartment to monitor the defendant’s movements, allegedly for the officer’s safety. 227 N.J. 460, 464-65, 152 A.3d 887 (2017). This Court held that the officer’s conduct was unconstitutional because law enforcement personnel conducting Terry investigations may only act to protect themselves during that limited encounter, and that aim would not be furthered by warrantless entry into a detainee’s home. Id. at 473, 152 A.3d 887.
In sum, the latest guidance in this general area has ratified the preeminent requirement of a warrant, or clearly granted consent, *106 before an officer may accompany an individual into the recesses of her home. Exigency creates its own sets of rules, depending on the exception to the warrant requirement relied upon.
Although we include that guidance for completeness, it cannot inform our analysis of the officers’ conduct in this case because it came years after the contested home entry. Once again, determination of the existence of whether a constitutional right was clearly established and violated depends, for purposes of qualified immunity analysis, on the state of the law at the time of the alleged violation.
V.
Applying these legal principles to the facts of this case, Detective Steet will be entitled to qualified immunity so long as New Jersey law did not “clearly establish[ ] that [his] conduct was unlawful in the circumstances.” Saucier, supra, 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281. To make that determination, we must assess whether, on November 20, 2008 (the date of the entry into Brown’s home), the law was “sufficiently clear that a reasonable official” in Detective Steet’s position would have known that the warrantless entry violated Brown’s rights. Anderson, supra, 483 U.S. at 640, 107 S.Ct at 3039, 97 L.Ed.2d at 531.
The Attorney General argues that Detective Steet relied on McArthur when he asked Brown to choose between not entering her home, letting the detective secure it from the outside, or entering with an officer who would secure it from the inside. In doing so, consistent with police training and supervisor approval in these circumstances, the State maintains that Steet acted reasonably — not incompetently or knowingly wrongfully — and should be entitled to the benefit of qualified immunity.
Given McArthur’s ambiguity, tins Court’s lack of precedent regarding McArthur and Segura, and inconsistent interpretations of those cases by the Appellate Division, we are compelled to recognize the force of the State’s argument that the parameters of *107 a permissible seizure of a home pending a search warrant were not clearly established within New Jersey when Detective Steet acted, such that a reasonable officer in his position would not have known that his conduct was unlawful. Saucier, supra, 533 U.S. at 202, 121 S.Ct. at 2156, 150 L.Ed.2d at 282; see, e.g., Morillo, supra, 222 N.J. at 120, 117 A.3d 1206 (finding qualified immunity applied in context of ambiguous application of statutory exemption).
As of November 20, 2008, neither McArthur itself nor any strain of New Jersey case law interpreting McArthur defined the boundaries within which an officer must abide when securing a residence while awaiting a search warrant. First, McArthur clearly holds that an officer may secure a home from the outside by preventing a suspect’s reentry to preserve evidence that the officer has reason to believe is within the home while he awaits a search warrant. McArthur, supra, 531 U.S. at 328, 121 S.Ct. at 948, 148 L.Ed.2d at 846. In support of that holding, the Court cited Segura, in which both the majority and minority of the Court agreed that officers seeking to secure a home “might lawfully have sealed the apartment from the outside, restricting entry into the apartment while waiting for the warrant.” Id. at 333, 121 S.Ct. at 951, 148 L.Ed.2d at 849 (emphases added).
Yet, McArthur does not foreclose the possibility that officers might lawfully enter a home to secure it when the occupant, as here, insists on entry. The Court noted that the officer on the scene prevented McArthur from entering his home “unless a police officer accompanied him,” but the Court did not explicitly and separately address whether the officer could have “accompanied” McArthur into the residence. Id. at 329, 121 S.Ct. at 949, 148 L.Ed.2d at 846. In fact, while awaiting a warrant, the officer twice monitored McArthur from inside the door, which the Court labeled an “observation.” Id. at 329, 335, 121 S.Ct. at 949, 952, 148 L.Ed.2d at 846, 850. Moreover, the Supreme Court noted that the limited entry avoided “significant intrusion into the home itself,” and cited as support Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379-80, 63 L.Ed.2d 639, 650 (1980), and *108 United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972), both of which recognize that “physical entry of the home is the chief evil against which the ... Fourth Amendment is directed.” Id. at 331, 121 S.Ct. at 950, 148 L.Ed.2d at 847-48.
Finally, in ranking the various “intrusions,” the Court held that it would be a greater intrusion to enter a home to conduct a warrantless arrest or search than to “[t]emporarily keep[] a person from entering his home,” id. at 336, 121 S.Ct. at 953, 148 L.Ed.2d at 851, and it would be a greater intrusion to prohibit reentry altogether than to permit it “conditioned on observation,” id. at 335, 121 S.Ct. at 952, 148 L.Ed.2d at 850, However, nowhere in that ranking, or in its opinion, did the Court address the intrusion effected by a warrantless entry to allow for extended observation, as in this case. Instead, McArthur's “language leaves open to debate the intended reach” of its new rule. Morillo, supra, 222 N.J. at 123, 117 A.3d 1206.
Due to its inherent ambiguity on the subject at issue, McArthur does not clearly establish that Detective Steet acted unlawfully when he entered Brown’s home to secure it from within. See ibid. It is likewise not clearly established by McArthur whether Detective Steet could offer Bi-own the choice of awaiting the warrant outside of her home or inside the home with police accompaniment.
Second, because the scope of McArthur’s holding “remains unsettled by any interpretive decision by [New Jersey] courts,” Detective Steet cannot fairly be l'egarded as violating clearly established state law when he entered Bi-own’s home to secure it pending issuance of a search warrant. Ibid. As of November 2008, this Court had neither interpreted McArthur nor defined the extent of permissible police activity under the New Jersey Constitution in light of McArthur. Although we cited McArthur in Wright, supra, as suppoxt for the proposition that, rather than enter a home without a warrant, an officer should secure the premises from the outside, tire Court did not decide Wright until 2015; therefore, although Wright directs a limited application of *109 McArthur under the New Jersey Constitution, its guidance was not available to Detective Steet at the time of his conduct. 221 N.J. at 478, 114 A.3d 340 (citing McArthur, supra, 531 U.S. at 334, 121 S.Ct. at 951-52, 148 L.Ed.2d at 849).[7]
Likewise, as of 2008, this Court had not weighed in on Segura’s competing analyses regarding an officer’s occupation of a home while awaiting a search warrant. The few published Appellate Division decisions interpreting and applying Segura did so inconsistently. As noted previously, one panel determined that an officer acted reasonably in securing a home from within, Myers, supra, 357 N.J.Super. at 39, 813 A.2d 1238, but two others held that such conduct would be unconstitutional if the facts lacked sufficient exigency, Josey, supra, 290 N.J.Super. at 29, 674 A.2d 996, or if the officers could have secured the home from the outside, DeLane, supra, 207 N.J.Super. at 50, 503 A.2d 903. Although one Law Division decision interpreted Segura to allow warrantless occupation of a home pending issuance of a search warrant, even without exigent circumstances, Speid, supra, 255 N.J.Super. at 403, 605 A.2d 297, no published appellate decision has favorably cited Speid for that proposition.
Based on the lack of New Jersey ease law interpreting McAr-thur or clearly addressing the propriety of seizure of a home from within in order to secure evidence, we find that New Jersey’s precedent was not sufficiently clear to support a conclusion that Detective Steet violated “clearly established law” when he entered Brown’s home to secure it. Morillo, supra, 222 N.J. at 123, 117 A.3d 1206.
Finally, we note that, although police department policies do not hold compelling weight in a qualified immunity analy *110 sis, see City & County of San Francisco v. Sheehan, 575 U.S. -, 135 S.Ct. 1765, 1777-78, 191 L.Ed.2d 856, 870 (2015), Detective Steet’s reliance on State Police training and policy is of some value. The Supreme Court has found such policies “important to [the Court’s] conclusion” regarding qualified immunity when “the state of the law” at the time of the challenged conduct “was at best undeveloped.” Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 1700-01, 143 L.Ed.2d 818, 832 (1999). When that is the ease, “it [is] not unreasonable for law enforcement officers to look and rely on their formal ... policies.” Id. at 617, 119 S.Ct. at 1700-01, 143 L.Ed.2d at 832.
Here, Detective Steet’s supervisor, Sergeant Perry, testified at trial that the State Police have an adopted policy of allowing officers, who are securing a home pending the issuance of a search warrant, to await the warrant inside the home if the occupant chooses to do so. Although not determinative or of controlling weight, we find the existence of such policy to be informative when determining the reasonableness of Detective Steet’s conduct, who relied on his police training when confronted with this unsettled area of the law. See ibid., 119 S.Ct. at 1700-01, 143 L.Ed.2d at 832.
In conclusion, we hold that Detective Steet is entitled to qualified immunity as to Brown’s NJCRA claim because regardless of whether his conduct amounts to a violation of a constitutional right, that right was not clearly established at the time that he acted. See Pearson, supra, 555 U.S. at 227, 129 S.Ct. at 813, 172 L.Ed.2d at 570 (declining to consider constitutional violation prong based on finding no violation of clearly established law).
VI.
Although our finding with respect to the State’s McArthur argument resolves this matter, we pause to add clearer guidance going forward.
New Jersey recognizes the exigency exception to the warrant requirement. In a case of true exigency and probable cause, the police can enter a dwelling. However, police-created *111 exigency “designed to subvert the warrant requirement” has long been rejected as a basis to justify a warrantless entry into a home, in comparison to exigency that arises “as a result of reasonable police investigative conduct intended to generate evidence of criminal activity,” which can justify entry. Hutchins, supra, 116 N.J. at 460, 470, 661 A.2d 1142; see also State v. Walker, 213 N.J. 281, 296, 62 A.3d 897 (2013). Further, invocation of a person’s constitutional right to refuse an officer’s request for a consent search “is not probative of wrongdoing and cannot be the justification for the warrantless entry into a home.” State v. Frankel, 179 N.J. 586, 611, 847 A.2d 561, cert. denied, 543 U.S. 876, 125 S.Ct. 108, 160 L.Ed.2d 128 (2004); accord State v. Domicz, 188 N.J. 285, 306-09, 907 A.2d 395 (2006).
The State does not rely on exigency to justify entry into Brown’s home for good reason: police-created exigency cannot form a basis to enter a residence to secure it. In light of our precedent, Detective Steet could not justify entry into Brown’s home by notifying her that he was looking for a gold locket necklace as part of a criminal investigation and then relying on her refusal to consent. In other words, Detective Steet could not rely on Brown’s decision to refuse consent, informed by her newly acquired knowledge of the object of the officers’ search, as “justification for [his] warrantless entry into [her] home,” in violation of her rights. Frankel, supra, 179 N.J. at 611, 847 A.2d 561. A person answering her door and faced with a request by a law enforcement officer for consent to search her home for a specific item has every right to say no and shut the door. A person asked that question outside her home, in her yard, on her sidewalk, or on her front steps has the equivalent right to walk away, enter her home, and decline the officer the right to enter.[8] We reaffirm the primacy of one’s privacy rights in a home.
Also, in the future, law enforcement officials may not rely on McArthur to enter an apartment to secure it while awaiting a *112 search warrant. Although McArthur does not explicitly permit or forbid entry into a home under those circumstances, our ruling today makes clear that officers may not do so. They must get a warrant and, if reasonably necessary, may secure the apartment for a reasonable period of time from the outside. As a result, because the Attorney General argues, fairly, that reliance on an understanding of McArthur and its reach justified Detective Steet’s entry into Brown’s home in order to secure it from within and because New Jersey’s interpretation of McArthur was not clearly established at the time of his conduct, we conclude that Detective Steet is entitled to qualified immunity.
VII.
The judgment of the Appellate Division is reversed, and the trial court’s dismissal of this action against Detective Steet is reinstated.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA’s opinion. JUSTICE ALBIN filed a separate, dissenting opinion.

 One defendant remains in this matter. All other defendants have been dismissed and all federal claims, which had been removed to federal court, were dismissed with prejudice.

 Detective Eskridge testified that, consistent with the Assistant Prosecutor's advice, "the best bet was to execute the search warrant on the car first" to "obtain additional evidence that [would] buildf] the [probable cause] for her apartment." Detective Steet’s testimony, aligned with that of Detective Eskridge, indicated that the officers lacked probable cause to search Brown’s home until after the search of her car had been completed. As noted, the search of Brown's car did not take place until the morning of November 20, sometime before 10 a.m.

 Steet testified that Brown could have returned to her neighbor’s apartment or the detectives could have taken her to pick up her car, as originally intended. However, Brown wanted to go into her own home, and she did not want to consent to a search of her home.

 During the time that the officers were in her home, Brown required use of her lavatory. Detective Steet told Brown that she could leave the apartment to use one off-premises, such as a nearby public restroom or a neighbor’s bathroom, or she could use her own bathroom but she would have to be accompanied by a female officer. Brown, who had a medical condition, objected and determined to use her own bathroom. A female Vineland police officer was brought in to accompany her. Brown was afforded no privacy during her use of the facilities. Pre-trial, the motion court determined that the many disputed facts over the type of search (visual, strip, or cavity) conducted by the female officer during the bathroom encounter required the denial of summary judgment to all officers (including Steet) still on the premises when that incident occurred. Some confusion, discussed infra, spilled over as to what other facts would be presented to the jury relating to the qualified immunity issues that were not resolved prior to trial. Brown's counsel did not pursue the issue at the time and allowed it to be sorted out at trial. The bathroom incident was not the focus of the qualified immunity issue eventually pursued on appeal. This appeal focuses on entry into the apartment.

 Brown’s complaint also alleged a violation of the Fourth Amendment of the United States Constitution, but that claim was dismissed prior to trial. Brown v. State, 442 N.J.Super. 406, 416 n.4, 124 A.3d 243 (App. Div. 2015).

 Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

 The only New Jersey precedent to have cited McArthur by 2008 was State v. Nikola, which referenced McArthur in support of the seizure of a person, rather than a home, before holding that an officer did not require an arrest warrant to enter the defendant's garage because she had already been seized during a temporary investigative detention at the time of entry. 359 N.J.Super. 573, 583, 586, 821 A.2d 110 (App. Div.), certif. denied, 178 N.J. 30, 834 A.2d 404 (2003).

 Here, the State cites King, supra, 563 U.S. at 466, 131 S.Ct. at 1860, 179 L.Ed.2d at 879, to argue that the exigency that arose in this matter was not *112 impermissible police-created exigency because the detectives lawfully chose to obtain consent to search Brown's apartment rather than seek a search warrant. However, this Court finds that argument unpersuasive, as the detectives here did not merely seek Brown's consent, but informed her of the object of their search in doing so and then relied on her refusal to find exigency. In any event, because King was decided in 2011, three years after the events at issue, this Court does not consider that case when analyzing Detective Steet's conduct.