NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1276-19T3

JONATHAN CRUZ,

       Plaintiff-Appellant,

v.

THE CAMDEN COUNTY
POLICE DEPARTMENT,
CAMDEN COUNTY, AND
MICHAEL DOUGHERTY,

       Defendants-Respondents.

_____

**APPROVED FOR PUBLICATION**

**January 11, 2021**

**APPELLATE DIVISION**

Argued November 10, 2020 – Decided January 11, 2021

Before Judges Fisher, Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law
Division, Camden County, Docket No. L-3570-17.

Anthony Granato argued the cause for appellant (Jarve
Kaplan Granato Starr, LLC, attorneys; Anthony
Granato, on the brief).

Sean P. O'Brien argued the cause for respondents
Camden County Police Department and Camden
County (Brown & Connery LLP, attorneys; Sean P.
O'Brien and William F. Cook, on the brief).

Michael Sarno argued the cause for respondent Michael
Dougherty (Gurbir S. Grewal, Attorney General,
attorney; Jane C. Schuster, Assistant Attorney General,

of counsel; Joseph Neal, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

Plaintiff Jonathan Cruz was arrested and indicted for murder. After spending two years in jail, he was tried, and a jury acquitted him. Thereafter, he filed a civil action alleging that the lead investigating detective misled the grand jury and thereby violated his civil rights.

Cruz appeals from an order granting summary judgment to the detective and dismissing his claims with prejudice. We affirm because the detective had immunity from his testimony before the grand jury. Moreover, the undisputed facts establish that the detective did not violate plaintiff's civil rights.

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to Cruz. Robinson v. Vivirito, 217 N.J. 199, 203 (2014).

On April 3, 2014, E.T. was shot and killed.[1] Law enforcement personnel initiated an investigation, and defendant Detective Michael Dougherty of the Camden County Prosecutor's Office was the lead investigator. The day after the

---

[1] We use initials for the victims and witnesses to protect their privacy interests.

murder, Dougherty and another detective took a statement from B.Z., a then fourteen-year-old witness. B.Z. told the detectives that she had been with the victim and had witnessed the shooting. B.Z. explained that E.T. had been walking her home when a male and female stepped out of an alleyway. The male pointed a gun at E.T., who slapped the gun and ran. The male fired multiple shots at E.T. B.Z. also stated that she had not seen the male shooter before, and that during the incident she had seen only the side of the shooter's face. She explained that after the shooting, her sister showed her a picture from Facebook, and she recognized the male depicted in the picture as the shooter.

Another detective then conducted a photo array identification procedure with B.Z. That detective explained the procedures for the array and showed B.Z. multiple pictures of different men. B.Z. identified a photograph of plaintiff as the person who shot E.T. In making that identification, B.Z. stated that she was "like positive" that the picture of plaintiff depicted the person she had seen shooting at E.T.

On May 6, 2014, a judge issued a warrant and Cruz was arrested and incarcerated that same day. On February 4, 2015, Dougherty testified before a grand jury. An assistant prosecutor asked Dougherty about his investigation of

3

E.T.'s murder, including his interview of B.Z., and B.Z.'s identification of plaintiff. Dougherty answered the questions posed by the assistant prosecutor.

On February 11, 2015, the grand jury indicted Cruz for the murder of E.T. The grand jury issued a superseding indictment on June 29, 2016. The trial was conducted in October and November 2016. At trial, B.Z. testified that she could not identify Cruz as the person who shot E.T.[2] At the end of the trial, the jury acquitted Cruz of E.T.'s murder.

In September 2017, Cruz filed a civil action alleging that he had been "wrongfully" arrested, incarcerated, and prosecuted, and that his civil rights had been violated. Initially, Cruz sued the Camden County Police Department, Camden County, and Dougherty. He then amended his complaint, naming as defendants Dougherty, the State of New Jersey, and Camden County. The claims against the State and Camden County were dismissed, and Cruz has not appealed from the orders dismissing those claims.

Concerning Dougherty, the amended complaint alleged that he violated Cruz's rights under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and the New Jersey Constitution. Cruz asserted there was no probable

---

[2] Plaintiff makes this representation but did not provide us with the trial transcript. For purposes of this appeal, we will accept this representation as true.

cause for his arrest and prosecution and Dougherty had been responsible for his wrongful arrest and prosecution. Thus, Cruz sought monetary damages from Dougherty.

In August 2019, after the parties conducted discovery, including the deposition of Dougherty, Dougherty moved for summary judgment. The trial court heard oral arguments on September 13, 2019 and requested further information about the photo array shown to B.Z. That information was submitted, and after hearing further arguments on October 25, 2019, the trial court granted summary judgment to Dougherty. That same day, the court filed an order memorializing its ruling and dismissing all of Cruz's claims with prejudice.

The trial court focused on Cruz's claim that Dougherty had misled the grand jury. Cruz alleged that Dougherty had failed to tell the grand jury that B.Z. was fourteen years old, that she saw only the side of the shooter's face, that her identification was not always confident, and that her sister had shown her a Facebook photograph of Cruz before the photo array. The trial court found that there was no evidence that Dougherty had lied to the grand jury; rather, the court found that the undisputed evidence showed that Dougherty had truthfully answered the questions posed by the assistant prosecutor at the grand jury.

Accordingly, the trial court reasoned that, at best, Dougherty had not volunteered additional information that may have challenged the weight of B.Z.'s identification of Cruz. The trial court then held that such evidence could not establish that Cruz's civil rights had been violated.

II.

Cruz now appeals from the October 25, 2019 final order and challenges only the dismissal of his claims against Dougherty. On appeal, Cruz makes a series of arguments, all contending that Dougherty failed to disclose certain information about B.Z.'s identification of him, and therefore a jury should be allowed to decide if Dougherty's "omissions" and "half-truths" violated Cruz's civil rights.

All of Cruz's arguments focus on Dougherty's testimony before the grand jury. Cruz is not claiming that Dougherty illegally arrested him without probable cause. Indeed, the record establishes that the arrest warrant was issued by a judge based on a probable cause statement by Dougherty. There is no evidence in the record that the arrest warrant lacked probable cause.

Consequently, to survive summary judgment, Cruz needs to show that Dougherty could be civilly liable for his grand jury testimony. We reject Cruz's arguments for several reasons.

A-1276-19T3

A. Dougherty Has Absolute Immunity

The NJCRA authorizes a private cause of action to

> [a]ny person who has been deprived of any substantive
> due process or equal protection rights, privileges or
> immunities secured by the Constitution or laws of the
> United States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by
> threats, intimidation or coercion by a person acting
> under color of law . . . .
>
> [N.J.S.A. 10:6-2(c).]

The NJCRA, which was modeled on 42 U.S.C. § 1983, created a private cause of action for violations of civil rights secured by the federal and New Jersey Constitutions. Tumpson v. Farina, 218 N.J. 450, 474 (2014); Rezem Fam. Assocs., L.P. v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011). Thus, in interpreting the NJCRA, New Jersey courts often look to federal cases analyzing § 1983. See Farina, 218 N.J. at 474 (cases applying "[§] 1983 may provide guidance in construing our Civil Rights Act.").

The United States Supreme Court has held that witnesses testifying before a grand jury, including law enforcement officers, have absolute immunity from claims under 42 U.S.C. § 1983. Rehberg v. Paulk, 566 U.S. 356, 367-69 (2012). In Rehberg, the plaintiff brought a civil rights action under 42 U.S.C. § 1983,

7

asserting that a lead investigator for a district attorney's office falsely testified before a grand jury, which resulted in the plaintiff being indicted three different times. The Supreme Court affirmed the dismissal of his civil rights claims, ruling that a witness testifying before a grand jury has absolute immunity from a civil rights claim. In reaching that conclusion, the Supreme Court explained:

> The factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses. In both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence. And in neither context is the deterrent of potential civil liability needed to prevent perjurious testimony . . . Since perjury before a grand jury, like perjury at trial, is a serious criminal offense, . . . there is no reason to think that this deterrent is any less effective in preventing false grand jury testimony.
>
> Neither is there any reason to distinguish law enforcement witnesses from lay witnesses.
>
> [Id. at 367.]

The New Jersey Supreme Court has not had occasion to say whether it will apply the holding in Rehberg to the NJCRA. We hold that the rule of absolute immunity announced in Rehberg applies to the NJCRA when a witness is alleged to have omitted testimony. We leave for another day whether a grand jury witness has absolute immunity if he or she gives false testimony because that issue is not presented on the facts in this appeal. Moreover, because plaintiff

8

only asserted claims under the NJCRA, we also need not decide whether this immunity insulates a grand jury witness from liability on other causes of action.[3]

B.    Dougherty Also Has Qualified Immunity

"The affirmative defense of qualified immunity protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown v. State, 230 N.J. 84, 97-98 (2017) (quoting Morillo v. Torres, 222 N.J. 104, 116 (2015)).  This affirmative defense applies to NJCRA claims and "tracks the federal standard, shielding from liability all public officials except those who are 'plainly incompetent or those who knowingly violate the law.'"  Id. at 98 (quoting Morillo, 222 N.J. at 118).  The defense "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

To determine if a governmental official

---

[3] Plaintiff did not assert any causes of action other than violations of the NJCRA, and through NJCRA, the New Jersey Constitution.

is entitled to qualified immunity requires inquiries into whether: (1) the facts, "[t]aken in the light most favorable to the party asserting the injury[ ] . . . show the officer's conduct violated a constitutional right"; and (2) that constitutional "right was clearly established" at the time that defendant acted.

[Brown, 230 N.J. at 98 (alterations in original) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).]

"[Q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 304 (App. Div. 2017) (quoting Ramos v. Flowers, 429 N.J. Super. 13, 28 (App. Div. 2012)). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Ibid. (alteration in original) (quoting Gormley v. Wood-El, 218 N.J. 72, 113 (2014)).

Cruz alleges that Dougherty violated his constitutional rights by not providing additional testimony concerning his interview of B.Z. and the photo array. Grand jury presentations are controlled by the State through the Attorney General's Office or a prosecutor's office. See Off. of the Att'y Gen. & Cnty. Prosecutors Ass'n of N.J., Grand Jury Manual for Prosecutors (1993). Accordingly, decisions concerning which witnesses to call at the grand jury and

what questions to ask rest within the discretion of either the Attorney General or a prosecutor.

When the charges against Cruz were presented to the grand jury, an assistant prosecutor decided to call Dougherty and decided what questions to ask Dougherty. To the extent that there was an obligation to present facts, that obligation rested with the assistant prosecutor. Dougherty, as a witness, had no clear constitutional obligation to volunteer information that was not called for in response to the assistant prosecutor's questions.

Moreover, there was no clear constitutional violation in the evidence that was presented to the grand jury. Cruz contends that B.Z.'s identification of him was weak and that the photo array was flawed. Cruz, however, has identified no exculpatory evidence that was not presented to the grand jury. Instead, he argues that information that may have raised questions about the reliability of B.Z.'s identification should have been elicited before the grand jury. That information is not clearly exculpatory evidence. See State v. Hogan, 144 N.J. 216, 238 (1996) ("Only when the prosecuting attorney has actual knowledge of clearly exculpatory evidence that directly negates guilt must such evidence be presented to the grand jury."). Consequently, Dougherty's failure to volunteer information does not establish a clear constitutional violation.

11

## C.    The Presence of Probable Cause Defeats Cruz's Claims

Finally, even if we did not consider absolute or qualified immunity, Cruz's claims depend on his ability to show that he was wrongfully indicted and incarcerated. "[A] law enforcement officer can defend such a claim 'by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" Morillo, 222 N.J. at 118-19 (quoting Kirk v. City of Newark, 109 N.J. 173, 184 (1988)).  Accordingly, "probable cause is an absolute defense" to NJCRA claims.  See Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000).

"Probable cause exists if at the time of the arrest 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" Ibid. (first and third alternations in original) (citations omitted).  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  That 'is not a high bar.'" State v. Pinkston, 233 N.J. 495, 509 (2018) (alteration in original) (citations omitted).

The summary judgment record establishes that there was probable cause both for the arrest and the indictment of Cruz.  As already noted, the arrest

12

warrant was issued by a judge based on a statement given by Dougherty. Nothing in the record suggests that Dougherty's statement was inaccurate. Before the grand jury, Dougherty testified truthfully that B.Z. identified Cruz as the person who shot E.T. Dougherty also testified that other witnesses informed him and other detectives about an ongoing dispute between E.T. and Cruz. Those facts established probable cause for Cruz's indictment. Indeed, the criminal charges against Cruz were not dismissed on a motion. Instead, the criminal charges proceeded to trial, where a jury acquitted Cruz applying a beyond a reasonable doubt standard - a much higher standard than probable cause.

In summary, the material undisputed facts establish that Dougherty was entitled to immunity and no evidence existed from which a trier of fact could find that Dougherty had violated the NJCRA or a clear constitutional right.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1276-19T3