**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0436-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DARREN E. RICHARDSON,

     Defendant-Appellant.

_____

Submitted October 20, 2020 – Decided December 1, 2020

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 17-10-0966.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert Carter Pierce, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant was tried before a jury and found guilty of third-degree possession of a controlled dangerous substance (CDS), namely marijuana, with intent to distribute, and other offenses. He was sentenced to an aggregate term of eight years of incarceration, with four years of parole ineligibility. He appeals from the judgment of conviction dated July 26, 2018. We affirm.

I.

In October 2017, a Passaic County grand jury returned a twenty-four-count indictment in which defendant was charged with fourth-degree distribution of a CDS (marijuana), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(12) (count five); fourth-degree possession of a CDS (marijuana), N.J.S.A. 2C:35-10(a)(3) (count six); third-degree possession of a CDS (marijuana), with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count seven); third-degree distribution of a CDS (marijuana), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count eight); fourth-degree possession of a CDS (hashish), N.J.S.A. 2C:35-10(a)(3) (count nine); and third-degree possession of a CDS (hashish), with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count ten). Beatrice J. Ramirez, George E. Thomas, Shaina M. Harris, Daniel F. Valerio, Leonardo J. Barragan, and Kenneth Coe also were

charged in the indictment with various offenses related to the possession of a CDS.[1]

The trial court denied defendant's motion to dismiss count five of the indictment and his motion to sever certain counts in the indictment. In addition, the court denied defendant's motions to suppress evidence based upon a warrantless search, preclude the State from presenting certain laboratory evidence, compel the State to provide additional discovery, and require the State to disclose the identity of a confidential informant.

Prior to trial, Barragan pled guilty to count twenty-two of the indictment, in which he was charged with third-degree possession of marijuana with intent to distribute. In addition, Coe pled guilty to count twenty-three in which he was charged with fourth-degree possession of marijuana. It is unclear from the record how the charges against Cespedes and Harris were resolved. Defendant, Ramirez, and Valerio were tried before a jury.

At the trial, Detective Vincent Ricciardelli testified that in August 2017, he was employed by the Wayne Township Police Department (WTPD) and assigned to its Special Operations and Narcotics Bureau. He was assisting the

---

[1] The State and defendant refer to Thomas as George Thomas Cespedes.

A-0436-18T1

Passaic County Prosecutor's Office (PCPO) in its investigation of Harris and Cespedes regarding the illegal possession and distribution of marijuana.

Ricciardelli said the officers had search warrants for Harris's residences on Lake Drive in Haskell, New Jersey, and on Front Street in Paterson, New Jersey, but Harris could not be found at those locations. The officers contacted an informant who told them Harris was going to be at a Ramada Inn in Wayne. On August 2, 2017, Ricciardelli and Detective Paul Kindler of the WTPD went to that location.

Ricciardelli testified that he observed Harris enter the hotel. Ricciardelli and Kindler then set up surveillance at the hotel, using the hotel's surveillance cameras. Ricciardelli saw defendant, whom he knew from a prior narcotics investigation. According to Ricciardelli, defendant was supposed to be on home detention as a condition of bail related to other CDS charges. The hotel manager informed Ricciardelli that defendant was staying in Room 245.

Ricciardelli stated that it appeared drug activity was taking place in and around defendant's room. Ricciardelli observed several persons coming in and out of the room. Early in the afternoon, Ricciardelli observed a female, who was later identified as Ramirez, arrive at the hotel in a white Mercedes. She

4

parked in the rear parking lot near Room 245 and used a key card to enter the room.

Ramirez thereafter exited the room, got into the Mercedes, and drove to the front of the hotel. She later drove the Mercedes to the rear of the building and parked the car alongside a Jeep. She used a key fob to open the doors to the Jeep and placed an object in that vehicle. She then returned to Room 245.

On August 3, 2017, Ricciardelli and Kindler continued their surveillance at the hotel. Ricciardelli observed defendant and Barragan entering and exiting Room 245. He saw defendant leave the room with a brown paper bag, go to the white Mercedes, place the bag on the car's rear passenger seat, and return to the room. A short time later, defendant left the room with a small paper bag, which he placed in the front passenger seat of the Mercedes. Defendant then returned to the room, while Ramirez and an unknown male drove off in the Mercedes.

That afternoon, Ricciardelli observed a white Nissan Maxima arrive and park in the rear of the Ramada Inn. Two males, who were later identified as Coe and Valerio, exited the car. Coe had been driving the Nissan and Valerio was the passenger. They met defendant on the second-floor balcony outside Room 245 and had a short conversation. Coe entered the room but remained in the

open doorway. Coe had a black plastic bag in his hand. He appeared to open the bag and show defendant its contents. Ramirez and Barragan left the room.

A short time later, Coe emerged from the room. He was holding a small, white plastic shopping bag. Coe and Valerio went down the stairs and departed in the white Nissan Maxima. Ricciardelli radioed police units in the area and informed them that it appeared a drug transaction had taken place. He directed the units to make an investigatory stop of the car.

At the time, Detective Gary Bierach of the Totowa Police Department (TPD) and another detective were stationed at a location on Route 46 in Totowa, a short distance from the hotel. They followed the Nissan and conducted a motor vehicle stop. Bierach reported to Ricciardelli what had happened during the stop. Ricciardelli decided to secure Room 245 at the Ramada Inn and either obtain consent to search the room or apply for a search warrant. He was concerned evidence could be altered or destroyed.

Ricciardelli knocked on the door and loudly announced, "Police." The door was ajar and he could smell a heavy odor of raw marijuana. Defendant, Ramirez, and Barragan were in the room. The officers placed them under arrest and removed them from the room. The officers closed and locked the door. Two

officers were posted outside to ensure no one went in or out of the room. Officers also monitored the Mercedes.

Ricciardelli and another detective submitted an affidavit in support of an application for search warrants for defendant's room and the Mercedes. On August 4, 2017, a judge issued the warrants, which were executed that day.

Ricciardelli testified that on a writing desk, the officers found a partially-smoked marijuana cigarette, a box of unused sandwich bags, a box of tin foil, an open roll of black garbage bags, a box of rubber bands, a pipe used to smoke tetrahydrocannabinol (THC) oil, and two containers with a residue of oil. In a wastepaper basket under the table, the officers found a clear Tupperware container with a digital scale and two bags of suspected raw marijuana.

Behind the door, the officers found a black garbage bag with trash. In the bag, the officers recovered a large food bag with suspected marijuana and a bag containing three empty plastic bags. On the bed, the officers found an open suitcase with a food saver bag. They found $3055 in cash on the nightstand, of which $3000 was wrapped in $1000 bundles with rubber bands. In the refrigerator, the officers found two sheets of THC wax wrapped in wax paper.

In a compartment in the trunk of the Mercedes, the officers recovered $17,500 in cash, of which $17,000 was wrapped in $1000 bundles with rubber

7

bands similar to those found in the room. The money was in white and black plastic bags, which were stuffed inside an empty box that had been placed into another box.

On cross-examination, Ricciardelli stated that he contacted the Passaic County Sheriff's Office and requested a K-9 team to examine Room 245 and the Mercedes for the presence of CDS. The team arrived after the officers secured the room. Ricciardelli said the dog sniffed the Mercedes and the area of the room but did not provide a conclusive "alert" of the presence of CDS at either location.

Bierach testified that in August 2017, he was employed by the TPD and assigned to the PCPO's Narcotics Task Force. He stated that on August 3, 2017, he was with another detective in an unmarked car. After receiving a communication from Ricciardelli, Bierach observed the white Nissan traveling east on Route 46. Bierach activated the lights and sirens on his vehicle and stopped the Nissan.

Coe and Valerio were in the car. Bierach approached the car from the driver's side and detected a strong odor of marijuana. He asked Coe and Valerio to exit the vehicle. According to Bierach, Valerio blurted out that he had "a bag

of weed."[2]  He removed the bag from the waistband of his pants and handed it to Bierach.  Valerio and Coe were arrested.

Bierach performed a visual search of the interior of the car.  He observed a white plastic bag and marijuana.  On the passenger side door, Bierach found a pull-string bag that contained marijuana and a grinding device.  In a compartment in the trunk, the officers recovered $17,500 in cash bundled in rubber bands similar to those found in the room.  Valerio and Coe were taken to the TPD.  Bierach transported the evidence to police headquarters and then returned to the Ramada Inn to assist in securing the individuals found Room 245.  The following day, he returned to the hotel and assisted the other officers in executing the search warrants.

Lieutenant Harrison Dillard of the Morris County Prosecutor's Office testified as an expert in street-level drug distribution.  Dillard described marijuana and its characteristics, including its odor.  He discussed the use of hotel rooms and automobiles in drug-distribution schemes and the packaging of

---

[2]  During trial, the court conducted a N.J.R.E. 104 hearing and struck from the record Bierach's testimony that Valerio said he had a "bag of weed" on the basis that it was made in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Consequently, Valerio's charge was reduced to the possession of marijuana, a disorderly persons offense.

A-0436-18T1

marijuana. He described THC, THC wax, and the significance of the packaging of cash in bundles using rubber bands.

Valerio testified that on August 3, 2017, he went with Coe to the Ramada Inn in Coe's white Nissan. Valerio acknowledged that earlier that day, he had smoked marijuana. Valerio and Coe got out of the car and went to defendant's room. Coe was carrying a black plastic bag with White Owl cigars. Defendant greeted them. Coe went into the room and Valerio remained outside on the second-floor balcony, smoking a cigarette.

Valerio testified that when Coe left the room, he was carrying a white plastic bag but he did not know what was in the bag. They got into the car. Valerio said he did not know what Coe did with the white plastic bag. They left the hotel and drove to Totowa. On the way, the police stopped the car.

Defendant did not testify at trial; however, he called his mother as a witness. She stated that she had been living with defendant, Harris,[3] and others at a home on Lake Drive in Haskell. Defendant's mother said the family had to vacate the Lake Drive residence by the end of July 2017. She moved to a hotel in Ramsey, and defendant rented a room at the Ramada Inn in Wayne. She

---

[3] Harris is defendant's sister.

testified that suitcases from Harris's room at the Lake Drive residence were transported to defendant's room at the Ramada Inn.

The judge dismissed count eight in which defendant was charged with third-degree distribution of marijuana. The jury found defendant guilty on counts five (fourth-degree distribution of marijuana), six (fourth-degree possession of marijuana), seven (third-degree possession of marijuana, with intent to distribute), and nine (fourth-degree possession of hashish). The jury found defendant not guilty on count ten (third-degree possession of hashish, with intent to distribute. The jury also found Ramirez guilty on count three (fourth-degree possession of hashish), and Valerio not guilty of the disorderly persons charge of possession of marijuana.

As stated previously, the trial court sentenced defendant to an aggregate term of eight years of incarceration with four years of parole ineligibility. The court filed a judgment of conviction dated July 26, 2018. This appeal followed.

On appeal, defendant's attorney raises the following arguments:

> POINT I
> [DEFENDANT'S] CONVICTIONS FOR THIRD-DEGREE POSSESSION OF ONE OUNCE OR MORE OF MARIJUANA WITH THE INTENT TO DISTRIBUTE, POSSESSION OF FIFTY GRAMS OR MORE OF MARIJUANA AND POSSESSION OF FIVE GRAMS OR MORE OF HASHISH MUST BE REVERSED BECAUSE THE TRIAL COURT

PROVIDED ERRONEOUS JURY CHARGES AND A FATALLY FLAWED VERDICT SHEET. (Not Raised Below).

A. THE JURY DID NOT DETERMINE THE QUANTITY OF THE MARIJUANA POSSESSED WITH THE INTENT TO DISTRIBUTE OR THE AMOUNT OF MARIJUANA AND HASHISH POSSESSED.

B. THE INDICTMENT DID NOT PROVIDE FOR AGGREGATION OF WEIGHT.

C. THE JURY INSTRUCTION WAS ERRONEOUS.

POINT II
THE TRIAL COURT ERRED BY NOT SUPPRESSING THE EVIDENCE FROM THE WARRANTLESS SEARCH OF [DEFENDANT'S] HOTEL ROOM.

POINT III
THE TRIAL COURT ERRED BY NOT SUPPRESSING THE PHYSICAL EVIDENCE OBTAINED FROM THE SEARCH WARRANTS OF [DEFENDANT'S] ROOM AND RAMIREZ'[S] MOTOR VEHICLE BECAUSE THERE WERE MATERIAL MISSTATEMENTS IN THE SEARCH WARRANT AFFIDAVIT.

POINT IV
THE TRIAL COURT ERRED BY PERMITTING DETECTIVE RICCIARDELLI TO PROVIDE HEARSAY EXPERT TESTIMONY AS TO WHY K-9 JUSTUS DID NOT ALERT TO CDS AT [DEFENDANT'S] ROOM OR RAMIREZ'[S] MOTOR VEHICLE.

A-0436-18T1

POINT V
THE TRIAL COURT ERRED BY DENYING
[DEFENDANT'S] REQUEST FOR AN ADVERSE
INFERENCE JURY CHARGE FOR THE STATE'S
FAILURE TO CALL THE K-9 HANDLER AS A
WITNESS AND A SPOLIATION JURY CHARGE
FOR THE STATE'S FAILURE TO SECURE THE
VIDEO SURVEILLANCE TAPE FROM THE
RAMADA INN.

POINT VI
THE TRIAL COURT COMMITTED PLAIN ERROR
BY NOT STRIKING, SUA SPONTE,
INADMISSIBLE N.J.R.E. 404(B) EVIDENCE THAT
[DEFENDANT] CONTINUALLY SMOKED
MARIJUANA AND THEN FAILING TO GIVE THE
JURY A CURATIVE INSTRUCTION. (Not Raised
Below).

POINT VII
THE TRIAL COURT ERRED BY NOT RULING ON
[DEFENDANT'S] MOTION FOR A NEW TRIAL.

POINT VIII
THE TRIAL COURT ERRRED BY NOT
ADJOURNING [DEFENDANT'S] ACCELERATED
SENTENCING DATE.

Defendant filed a pro se supplemental brief, in which he argues:

POINT I
THE LOWER COURT'S ORAL DECISION WAS IN
CLEAR CONFLICT WITH THE NEW JERSEY
SUPREME COURT'S RULING IN BROWN v.
STATE, 230 N.J. 84 (2017).

A. THE LOWER COURT ERRED BY AGREEING
WITH LAW ENFOCEMENT OFFICIALS THAT

13

THEIR INITIAL [WARRANTLESS] ENTRY INTO THE HOTEL ROOM WAS CONSTITUTIONALLY PERMITTED IN ORDER TO "SECURE" THE ROOM.

B. THE LOWER COURT ERRED BY FAILING TO MAKE A DETERMINATION REGARDING THE WARRANTLESS SEIZURE OF DEFENDANTS, MADE UPON A WARRANTLESS ENTRY.

C. THE LOWER COURT'S FINDING THAT OFFICERS CONDUCTED AN "INVESTIGATORY SWEEP," WHICH WAS WHOLLY THE STATE'S ARGUMENT IN ITS BRIEF AND AT THE FEBRUARY 21, 2018 NON-TESTIMONIAL HEARING, WAS IN EFFECT A FINDING THAT A WARRANTLESS SEARCH WAS CONDUCTED.

    i. IF AN "INVESTIGATORY SWEEP" IS A "PROTECTIVE SWEEP," SUCH ACTION WAS NOT PERMISSIBLE IN THIS MATTER.

POINT II
THE LOWER COURT ERRONEOUSLY BASED ITS DECISION UPON MISAPPLICATION OF STATE v. ALVAREZ, 238 N.J. SUPER. 560 (APP. DIV. 1990).

POINT III
THE LOWER COURT ERRONEOUSLY BASED ITS DECISION UPON MISAPPLICATION OF STATE v. CLEVELAND, 371 N.J. SUPER. 286 (APP. DIV. 2004).

A. THE LOWER COURT ERRONEOUSLY FOUND THAT DEFENDANT'S HOTEL ROOM'S INTERIOR WAS VISIBLE, CONTRARY TO THE FACTS PRESENTED BY THE STATE.

14

B. STATE v. CLEVELAND DEALT WITH THE "PLAIN VIEW" EXCEPTION, WHICH IS NOT CONSISTENT WITH THE CASE AT BAR.

C. STATE v. CLEVELAND PERMITTED ENTRY INTO A HOTEL ROOM PURSUANT TO A VALID ARREST WARRANT BECAUSE "MILLER FACTORS" WERE SATISFIED TO JUSTIFY A WARRANTLESS ENTRY TO ARREST AN ARMED FUGITIVE.

POINT IV
THE LOWER COURT'S BRIEF GENERAL CLAIM OF EXIGENCY WAS UNSUPPORTED AND NO OBJECTIVELY REASONABLE BASIS WAS PROVIDED TO JUSTIFY A FINDING THAT THERE WAS AN OPPORTUNITY FOR DESTRUCTION OF EVIDENCE.

A. DESTRUCTION OF EVIDENCE WAS NOT IMMINENT IN THIS MATTER[] AND WAS NOTHING MORE THAN POLICE-CLAIMED SPECULATION.

B. THE LOWER COURT FAILED TO CONSIDER WHETHER "INVESTIGATIVE DETENTION" OF THE OCCUPANTS OF THE WHITE NISSAN WAS AN OPTION PENDING A WARRANT APPLICATION; OR, WHETHER AN ANTICIPATORY WARRANT WAS AN OPTION; OR, WHETHER POLICE COULD HAVE TIMELY OBTAINED A TELEPHONIC WARRANT.

C. THE LOWER COURT IMPROPERLY CONSIDERED THAT AN OPENED BAG OF MARIJUANA HAD A STRONG ODOR IN THE COURTROOM.

A-0436-18T1

II.

Defendant argues, for the first time on appeal, that his convictions on counts six, seven, and nine must be reversed because the trial court provided the jury with erroneous instructions regarding these charges and a fatally flawed verdict sheet regarding these offenses.

"[C]lear and correct jury charges are essential to a fair trial . . . ."  Wade v. Kessler Inst., 172 N.J. 327, 341 (2002) (alteration in original) (quoting Das v. Thani, 171 N.J. 518, 527 (2002)).  "Jury charges 'must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them . . . .'"  Velazquez v. Portadin, 163 N.J. 677, 688 (2000) (quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)).

Generally, "an appellate court will not disturb a jury's verdict based on a trial court's instructional error 'where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'"  Wade, 172 N.J. at 341 (quoting Fischer v. Canario, 143 N.J. 235, 254 (1996)).  The same standard applies "when evaluating the adequacy of a jury's interrogatories or

verdict sheet."  Ibid. (citing Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 467-68 (2000)).

"Without an objection at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'"  State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).  When a party fails to object to a jury instruction, an appellate court reviews the instruction for plain error.  Ibid. (citing R. 1:7-2; State v. Wakefield, 190 N.J. 397, 472-73 (2007)).

"Plain error refers to any error 'clearly capable of producing an unjust result.'"  Id. at 320-21 (quoting R. 2:10-2).  "Regarding a jury instruction, 'plain error requires demonstration of legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'"  Id. at 321 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

N.J.S.A. 2C:35-5(c) states "[w]here the degree of the offense for violation of this section depends on the quantity of the substance, the quantity involved shall be determined by the trier of fact."  The Model Jury Charge provides that:

> N.J.S.A. 2C:35-5 grades this offense for sentencing purposes by the type, quantity and purity of the CDS

involved. In certain cases, the defendant is guilty of an offense regardless of the quantity and purity of the CDS distributed. This charge is sufficient for such cases. However, in cases in which the quantity and/or purity of the CDS is an element of the offense, N.J.S.A. 2C:35-5c requires that this element be determined by the jury. In such a case, this charge would have to be supplemented to add this element.

[Model Jury Charges (Criminal), "Possession of a Controlled Dangerous Substance with Intent to Distribute (N.J.S.A. 2C:35-5)" (rev. June 8, 2015).]

The supplemental charge referred to above states:

[THE FOLLOWING IS TO BE CHARGED WHEN MARIJUANA OR HASHISH IS INVOLVED N.J.S.A. 2C:35-5(b)(10) - (12)]

Specifically, you must determine which one of the following quantities has been proven: . . .

2. (One (1) ounce) or more of (marijuana) (hashish) . . . including any adulterants and dilutants.

3. Less than (one (1) ounce) (five (5) grams) of (marijuana) (hashish) including any adulterants and dilutants.

After determining which one of these quantities the State has proven beyond a reasonable doubt, you should mark the appropriate section of the verdict sheet which will be supplied to you.

[Model Jury Charges (Criminal), "Supplemental Charge to Offenses Set Forth in N.J.S.A. 2C:35-5" (rev. Feb. 3, 1992).]

18

At trial, the parties agreed to a stipulation that provided, among other things, that: (1) the marijuana in the State's exhibits S-1, S-3, and S-4 had a combined weight of 368.5 grams, which is more than one ounce but less than five pounds; (2) the marijuana in exhibits S-5 through and including S-7 had a combined weight of 58.51 grams which is in excess of 50 grams, and (3) the hashish in exhibit S-2 had a combined weight of 24.3 grams which is in excess of five grams but less than one pound.[4]

In count six, defendant was charged under N.J.S.A. 2C:35-10(a)(3) with possession of marijuana in a quantity in excess of fifty grams. The jury found defendant guilty of this offense. The jury also found defendant unlawfully possessed S-1, S-3, and S-4. As noted, the parties stipulated that the combined weight of these three exhibits was 368.5 grams.

Furthermore, in count seven, defendant was charged under N.J.S.A. 2C:35-5(a)(1) and 35-5(b)(11) with possession of marijuana, in a quantity of one ounce or more but less than five pounds, with intent to distribute. The jury found defendant guilty of this offense. As noted above, the jury found defendant

---

[4] The record indicates that the exhibits were: a partially-smoked marijuana cigar (S-1); THC wax (S-2); two bags of marijuana from Room 245 (S-3); a vacuum-sealed package containing marijuana from Room 245 (S-4); a bag of marijuana seized from defendant's pants (S-5); two plastic bags containing marijuana from the Nissan (S-6); and a pull-string jewelry bag containing marijuana (S-7).

unlawfully possessed S-1, S-3, and S-4. According to the stipulation, these three exhibits had a combined weight of 368.5 grams, which is more than one ounce but less than five pounds.

In addition, in count nine, defendant was charged under N.J.S.A. 2C:35-10(a)(3) with possession of hashish in a quantity of more than five grams. As noted, the parties stipulated that the hashish in S-2 had a combined weight of 24.3 grams.

Defendant contends the judge erred by failing to instruct the jury that it must find beyond a reasonable doubt that he possessed the requisite quantities of CDS to be found guilty on counts six, seven, and nine. We disagree. The stipulation obviated the need for specific instructions or findings by the jury on the weight of the CDS required for conviction on each count. Nevertheless, in charging the jury on these three counts, the judge instructed the jury that it had to find that defendant possessed the CDS in the specific quantities applicable to each charge.

In addition, the jury specifically found that defendant possessed S-1, S-3, and S-4, which represented a determination that defendant possessed marijuana in the quantities charged under counts six and seven. Moreover, the jury's

A-0436-18T1

decision on count nine represents a determination that defendant possessed hashish in the amount charged.

Defendant further argues that the trial judge erred by failing to instruct the jury on the manner for aggregating the weight of the drugs in the State's exhibits. Again, we disagree. N.J.S.A. 2C:35-5(c) states that "[w]here the indictment or accusation so provides, the quantity involved in individual acts of . . . possessing with intent to distribute may be aggregated in determining the grade of the offense . . . ."

Defendant asserts that under State v. Rodriguez, 234 N.J. Super. 298, 306-10 (App. Div. 1989), aggregation of the quantity of the CDS is only permissible "if the indictment so provides." In this case, the indictment clearly placed defendant on notice of the quantities of CDS charged in counts six, seven, and nine. Thus, aggregation was permissible. Moreover, the parties stipulated to the combined amounts of marijuana and hashish in certain exhibits. Thus, defendant's reliance upon Rodriguez is misplaced.

Defendant also contends the jury instructions were flawed because the stipulation did not set forth the individual weight of the CDS is certain exhibits, the judge "lumped" the hashish with the marijuana, and did not give the jury the

21

opportunity to exclude some of the marijuana. These arguments are without merit.

As noted, defense counsel agreed to the stipulation and had no objection to the instructions. In addition, the stipulation separately addressed the marijuana and hashish, and there was no basis in the evidence for the jury to exclude some of the marijuana.

Even if a more specific instruction should have been provided to the jury regarding aggregation of the CDS, the absence of such an instruction did not rise to the level of plain error. It was not an error "clearly capable of producing an unjust result." R. 2:10-2.

Defendant's remaining arguments concerning the jury instructions and verdict sheet regarding counts six, seven, and nine lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

### III.

Next, defendant argues the trial judge erred by denying his motion to suppress the evidence obtained from the search of the hotel room. Here, the judge found that the law enforcement officers had a reasonable belief that a crime had been committed and the officers acted lawfully in securing the room and detaining defendant, Ramirez, and Barragan while they sought the search

warrants. Defendant argues that the State failed to establish exigent circumstances that justified the warrantless entry into the hotel room.

When reviewing the denial of a motion to suppress, we defer to the trial court's findings of fact "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). We disregard those findings of fact only if "clearly mistaken." Ibid. However, a trial court's legal conclusions are not entitled to special deference and are reviewed de novo. Id. at 263.

"The Fourth Amendment to the United States Constitution and Article I, paragraph [seven] of the New Jersey Constitution require that police officers obtain a warrant 'before searching a person's property, unless the search falls within one of the recognized exceptions to the warrant requirement.'" State v. Cassidy, 179 N.J. 150, 159-60 (2004) (quoting State v. DeLuca, 168 N.J. 626, 631 (2001); U.S. Const. amend IV; N.J. Const. art. I, ¶ 7).

"Exigent circumstances" is a recognized exception to the warrant requirement, and when "coupled with the existence of probable cause, will excuse a police officer's failure to have secured a written warrant prior to a search for criminal wrongdoing." Cassidy, 179 N.J. at 160 (citations omitted). "[C]ircumstances have been found to be exigent when they 'preclude

A-0436-18T1

expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both.'" Ibid. (quoting State v. Smith, 129 N.J. Super. 430, 435 (App. Div. 1974)). In determining if there is an exigency, the court should consider:

> the degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination.
>
> [Deluca, 168 N.J. at 632.]

When the State contends the threatened removal of drugs from a residence is an exigent circumstance, the court must consider "whether the physical character of the premises is conducive to effective surveillance, as an alternative to a warrantless entry," while the officers seek a warrant. State v. De La Paz, 337 N.J. Super. 181, 196 (App. Div. 2001) (quoting State v. Alvarez, 238 N.J. Super. 560, 568 (App. Div. 1990)). Exigent circumstances that arise "from unreasonable investigative conduct cannot justify [a] warrantless home entr[y]." Ibid.

Here, the trial judge noted that the officers at the hotel had observed defendant go back and forth from the room to the Mercedes several times and

place a bag in the car. The officers also observed Coe arrive at the hotel and show defendant a bag. Coe entered the room and later left with a different bag. The judge found that, based on their training and experience, the officers had a good faith basis for believing defendant and others had committed a crime.

The judge also noted that after Coe and Valerio left the hotel, the officers at the hotel had Coe's Nissan stopped on Route 46. Bierach approached the car and detected the odor of marijuana. The judge found that Bierach had a reasonable suspicion to believe the Nissan contained narcotics. The judge stated that the officers validly undertook a warrantless search of the Nissan.

The judge further found that thereafter, the officers at the hotel had sufficient information to undertake an investigatory sweep of Room 245 and detain defendant and the other occupants of the room so that the suspected CDS in the room was not destroyed. The judge rejected the assertion that the officers created an exigency. We are convinced there is sufficient credible evidence in the record to support the trial court's findings.

Defendant argues, however, that there is no evidence indicating he had knowledge he was under police investigation and surveillance at the hotel, or that he posed a threat to the police or the public. He contends the distribution

of thirty grams of marijuana to Coe is a fourth-degree offense, and that such a minor offense did not justify the warrantless entry into the hotel room.

We are convinced, however, that there is sufficient credible evidence in the record to support the trial court's finding that the officers' entry into the hotel room was justified because, under the circumstances, there was an opportunity for the alteration or destruction of the evidence, particularly after the officers stopped and arrested Valerio and Coe. Moreover, a fourth-degree offense is a felony and not a minor offense.

In support of his argument that there was no exigency to justify the warrantless entry into the hotel room, defendant cites Brown v. State, 230 N.J. 84 (2017). In that case, the Court considered whether the defendant member of the State Police was entitled to qualified immunity on the plaintiff's claim under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. Id. at 89.

In Brown, the plaintiff loaned her vehicle to her boyfriend, who was a suspect in a home invasion. Id. at 91. State Troopers stopped the vehicle, arrested the plaintiff's boyfriend for driving with a suspended license, impounded the vehicle, and notified the plaintiff. Ibid. The State Police kept the impounded vehicle for a week while continuing to investigate the home invasion. Ibid.

Thereafter, the State Police obtained a warrant to search the vehicle and found contraband, a gun holster, and other items that linked the car to the home invasion. Ibid. The officers did not, however, find a locket that had been reported stolen in the home invasion. Ibid. Accordingly, the State Police decided to search the plaintiff's apartment. Ibid. The plaintiff refused to consent to the search. Id. at 92.

The defendant told the plaintiff that if she refused consent, he would seek a search warrant and, in the interim, either prevent her from entering the home or allow her access, accompanied by police, to prevent loss or destruction of evidence. Ibid. The plaintiff decided to enter the apartment with an officer. Id. at 93. The State Police obtained a search warrant several hours later and returned to search the apartment. Ibid.

The State Police found a black drawstring bag that was similar to a bag described by the victims and eyewitnesses to the home invasion, but they did not find the locket. Ibid. The Court held that under the circumstances, the defendant State Trooper was entitled to qualified immunity because "regardless of whether his conduct amount[ed] to a violation of [the plaintiff's] constitutional right, that right was not clearly established at the time that he acted." Id. at 110 (citing Pearson v. Callahan, 555 U.S. 223, 227 (2009)).

The Court also provided guidance regarding application of the exigency exception to the warrant requirement. Ibid. The Court stated that a police-created exigency does not justify a warrantless entry into a home, "in comparison to exigency that arises 'as a result of reasonable police investigative conduct intended to generate evidence of criminal activity,' which can justify entry." Id. at 111 (quoting State v. Hutchins, 116 N.J. 457, 460 (1989)).

Moreover, a person's refusal to consent to a search "cannot be the justification for the warrantless entry into a home." Ibid. (quoting State v. Frankel, 179 N.J. 586, 611 (2004)). The Court also stated that law enforcement officers may not enter an apartment to secure the premises while awaiting a search warrant. Id. at 111-12. "They must get a warrant and, if reasonably necessary, may secure the apartment for a reasonable period of time from the outside." Id. at 112.

In our view, defendant's reliance on Brown is misplaced. Here, the trial court found that the exigency was not police-created, but rather the result of the officers' investigation of the suspected drug-distribution activity involving the hotel room and the Mercedes. The exigency arose when the police stopped Valerio and Coe.

It was reasonable for the officers at the hotel to assume defendant could learn that Valerio and Coe had been stopped and arrested, and defendant and the other occupants of the hotel room might destroy evidence. Furthermore, the police reasonably chose to enter the room to remove the occupants to ensure they did not alter or destroy evidence therein, while they sought the search warrants.

## IV.

Defendant contends the trial court erred by denying his motion to suppress evidence obtained in the execution of the search warrants for the hotel room and Mercedes. Defendant argues there were material misstatements and omissions in the application for the search warrants which rendered the searches invalid.

It is well-established that an affidavit for a search warrant is presumed to be valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). A defendant who challenges the validity of a search warrant affidavit is entitled to a Franks hearing only if the "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Id. at 155-56.

In making this showing, the defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171)). The defendant also must show that the misstatements claimed to be false are material "to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause." Id. at 568 (citing Franks, 438 U.S. at 171).

Here, defendant argues the affidavit submitted in support of the application for the search warrants did not include certain facts that "rendered the affidavit materially false." He asserts that Ricciardelli willfully failed to disclose that the K-9 officer had reported that the dog did not alert to the presence of CDS. However, Ricciardelli testified that the dog did not provide a conclusive positive "alert." These facts had no material bearing on whether a warrant should issue.

Defendant also contends that in the affidavit, the officers falsely stated they continued their surveillance at the hotel in an attempt to locate Harris, with negative results. He contends this statement was willfully false because the police had already seen Harris in Paterson.

The record shows, however, that the detectives learned through a confidential informant that Harris would be visiting the hotel. They saw Harris enter the hotel, where the officers observed defendant and others engage in what appeared to be the unlawful distribution of CDS and therefore continued the surveillance. The statement regarding the investigation of Harris was not false or material to the issuance of the warrants.

In addition, defendant contends that in the affidavit, the officers failed to state that when Ricciardelli inserted the key card into the slot on the door to the hotel room, the door was already open. Defendant has not shown, however, that this fact had any bearing on the probable cause determination.

Thus, defendant has not shown that the alleged misstatements and omissions were material, were made deliberately or with reckless disregard for the truth. Furthermore, the other facts in the affidavit established probable cause for the search of the hotel room and the Mercedes. Therefore, the judge did not err by denying defendant's motion to suppress evidence recovered in the search of the hotel room and Mercedes.

V.

Defendant argues that the trial judge erred by allowing Ricciardelli to testify as to the reasons that the K-9 team's dog did not provide a conclusive

31

alert to the presence of CDS in the hotel room or the Mercedes. Defendant contends this testimony was inadmissible hearsay. We disagree.

"A statement, made other than by the witness while testifying, offered to prove the truth of the content of the statement is hearsay evidence and is inadmissible unless it falls within one of the hearsay exceptions." State v. Savage, 172 N.J. 374, 402 (2002) (quoting State v. Phelps, 96 N.J. 500, 508 (1984)). "If evidence is not offered for the truth of the matter asserted, the evidence is not hearsay and no exception to the hearsay rule is necessary . . . ." State v. Long, 173 N.J. 138, 152 (2002) (citing State v. Chavies, 345 N.J. Super. 254, 274 (App. Div. 2001)).

During cross-examination, Ricciardelli acknowledged that in the affidavit for the search warrants, he did not state that the K-9 team's dog did not give a positive "alert" for CDS in the room or Mercedes. Defense counsel did not permit Ricciardelli to explain his reasons for omitting this information. On redirect, Ricciardelli stated that the K-9 officer informed him the dog could not pinpoint the location of the CDS because of windy conditions and the overwhelming odor of marijuana in the area.

The judge correctly found that this testimony was not hearsay because it was not "offered for the truth of the matter asserted . . . ." Long, 173 N.J. at

Rather, Ricciardelli's testimony explained why he did not include that information in the affidavit for the search warrants. See Russell v. Rutgers Cmty. Health Plan, 280 N.J. Super. 445, 456-57 (App. Div. 1995) (noting that statements are not hearsay when made to explain the reasons for the witness's actions).

## VI.

Next, defendant argues that the trial judge erred by denying his request for an adverse inference charge based on the State's failure to call the K-9 dog's handler as a witness at trial. We disagree.

We review a lower court's decision on whether to provide an adverse inference charge for abuse of discretion. State v. Dabas, 215 N.J. 114, 132 (2013). On appeal, we rely on the lower court's "dispassionate assessment of the circumstances to determine whether reference to an inference in summation is warranted and, further, whether a jury instruction should be injected into the mix of the parties' arguments, informing the jurors that they may draw such an inference from a party's failure to call a witness." State v. Hill, 199 N.J. 545, 561 (2009) (citing State v. Clawans, 38 N.J. 162, 172 (1962)).

"Care must be exercised because the inference is not invariably available whenever a party does not call a witness who has knowledge of relevant facts."

33

Ibid. When making a decision on an application for an adverse inference, the trial judge should consider the following:

> (1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue [;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.
>
> [Ibid. (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985)).]

Here, defendant argues the State should have called the K-9 team's dog handler to testify about the dog's reactions concerning the possible presence of CDS at the hotel room and Mercedes. The trial judge denied defendant's request for an adverse charge but permitted defendant's counsel "to argue to the jury in any way" regarding the State's failure to call this witness.

The K-9 officer was "within the control" of and available to the State "both practically and physically." Id. at 561. In addition, the officer's testimony about the dog's reactions would have been "superior" to Ricciardelli's testimony on this issue. Ibid.

34

However, the officer's testimony would not have addressed a critical fact at issue in this case. Although the dog did not provide a conclusive, positive "alert" for the presence of CDS in the hotel room or the Mercedes, the State presented evidence that the police recovered CDS in both locations. The judge did not mistakenly exercise his discretion by refusing to provide the jury with an adverse inference charge.

Defendant also argues that the judge erred by failing to provide the jury with a spoliation charge. He contends the charge was warranted because the State did not preserve the surveillance videos from the hotel. Again, we disagree.

A spoliation inference "allows a jury . . . to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her." Dabas, 215 N.J. at 140 n.12 (quoting Rosenblit v. Zimmerman, 166 N.J. 391, 401-02 (2001)). "An adverse inference charge balances the equities, in that the factfinder is permitted to presume that the evidence the spoliator destroyed or concealed would have been unfavorable to him or her. " Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 472 (App. Div. 2012). "When the duty to preserve evidence is violated, the party is responsible regardless of

whether the spoliation occurred because of intentional or negligent conduct." Id. at 472-73.

In this case, Ricciardelli used the surveillance camera in the hotel manager's office to observe defendant. Ricciardelli returned to the hotel a week or a week-and-a-half after the surveillance to obtain a recording of the hotel's surveillance footage. He testified that he was told the footage had been "overwritten."

There is no evidence that Ricciardelli ever possessed or exerted control of the footage, or that he "destroyed" or "concealed" evidence that would have been "unfavorable" to the State. Id. at 472. The trial court found Ricciardelli's testimony to be credible. The court's refusal to provide a spoliation charge was not an abuse of discretion.

## VII.

Defendant argues that the trial judge committed plain error by failing to strike, sua sponte, Valerio's testimony regarding his use of marijuana. Valerio testified that he and defendant smoked marijuana together "whenever we get a chance . . . ." He stated that defendant asked him and Coe for marijuana. He also testified that "Coe went inside [the hotel room] and rolled a cigar for him." Defendant's attorney did not object to the testimony.

N.J.R.E. 404(b)(1) does not permit the admission of evidence of other crimes, wrongs, or acts "to prove a person's disposition in order to show that on a particular occasion the person acted in accordance with such disposition." Such evidence may, however, "be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.RE. 404(b)(2).

In determining whether to admit evidence of another crime, wrong or act, the trial court must apply the four-part analysis established in State v. Cofield, 127 N.J. 328, 338 (1992). Under Cofield, the evidence: (1) must be relevant to a material issue; (2) it must be similar in kind and reasonably close in time to the offense charged; (3) the evidence of the other crime, bad act or wrong must be clear and convincing; and (4) the apparent prejudice from the admission of the evidence must outweigh its probative value. Ibid. See also State v. Green, 236 N.J. 71, 81-82 (2018) (noting that Cofield test must be applied in determining whether to admit evidence pursuant to N.J.R.E. 404(b)).

Where, as here, there is no objection to the admission of the evidence, we review the admission of the evidence for plain error. State v. Wint, 236 N.J. 174, 205 (2018). Therefore, we must determine whether the trial court erred by

admitting the evidence and, if so, whether the error was "clearly capable of producing an unjust result." R. 2:10-2.

Here, Valerio's testimony about defendant's use of marijuana met the test for admission under Cofield. The testimony was relevant. It corroborated Ricciardelli's testimony as to what he observed at the hotel. The evidence regarding defendant's possession and use of marijuana was reasonably close in time to the offenses charged in the indictment. Valerio's testimony also was clear and convincing, and its probative worth was not outweighed by any potential for undue prejudice.

Even if the trial judge erred by failing to strike the testimony sua sponte, the error does not rise to the level of plain error. R. 2:10-2. In view of the other evidence presented regarding defendant's possession and distribution of CDS, Valerio's testimony about defendant's use of marijuana was not "clearly capable of producing an unjust result." Ibid.

## VIII.

As noted previously, defendant has filed a pro se supplemental brief in which he argues that the trial judge erred by denying his motion to suppress evidence obtained in the search of the hotel room and the Mercedes. He

contends the trial court erroneously relied on <u>Alvarez</u> and misapplied <u>State v. Cleveland</u>, 371 N.J. Super. 286 (App. Div. 2004).

Defendant further argues that the trial court's decision on the suppression motion is inconsistent with <u>Brown</u>, and the court erred by finding that the officer's warrantless entry into the hotel room was permissible. Defendant also contends the trial court erred by failing to make a decision regarding the warrantless seizure of defendants, and by finding that the search was the product of a "protective sweep" or "investigatory sweep." He asserts the record does not support the court's finding that the interior of the hotel room was visible to the officers conducting surveillance, and the court erroneously found an exigency existed that justified the officers' entry into the hotel room to secure the evidence.

We have addressed the arguments regarding the searches of defendant's hotel room and the Mercedes. Defendant's additional arguments on these and other issues lack sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0436-18T1