**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1350-20

MICHAEL DOLINSKI,

     Plaintiff-Appellant,

v.

BOROUGH OF WATCHUNG
and CHIEF JOSEPH CINA,

     Defendants-Respondents.

_____

Argued March 16, 2022 — Decided July 8, 2022

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1080-19.

Patrick P. Toscano, Jr., argued the cause for appellant (The Toscano Law Firm, LLC, attorneys; Patrick P. Toscano, Jr., on the brief).

Kathryn V. Hatfield argued the cause for respondents (Hatfield Schwartz Law Group, LLC, attorneys; Kathryn V. Hatfield, of counsel and on the brief; Andreya DiMarco, on the brief).

PER CURIAM

Plaintiff Michael Dolinski, a police officer with defendant Borough of Watchung (the Borough), appeals from a Law Division order granting summary judgment dismissal on his claims under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, against the Borough and its Police Chief, defendant Joseph Cina. Having considered the parties' arguments and applicable law, we affirm.

I.

On August 15, 2019, plaintiff filed his complaint against defendants seeking compensatory and punitive damages based on violations of NJCRA and CEPA and claims of intentional infliction of emotional distress and municipal liability based on the Monell[1] doctrine. After plaintiff filed a first amended complaint, defendants removed the complaint to federal court based on subject matter jurisdiction. The matter was subsequently remanded back to the Superior Court after plaintiff voluntarily dismissed his municipal liability claim.

---

[1] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

A-1350-20

In this appeal, plaintiff argues the motion judge erred in granting summary judgment because he should have recused himself after releasing a preliminary decision; he misapplied the law in dismissing the NJCRA and CEPA claims; and he made improper factual determinations in dismissing plaintiff's claim for punitive damages. Plaintiff's intentional infliction of emotional distress claim was dismissed on summary judgment, but he does not challenge that ruling.

II.

Dismissal of Plaintiff's Complaint

At the completion of discovery, defendants filed a motion for summary judgment to dismiss plaintiff's complaint. Oral argument was conducted by an initial motion judge (hereinafter referred to as "initial motion judge" or "initial judge"), but the matter was then transferred to a different judge. Two days before oral argument in front of the second motion judge (hereinafter referred to as "motion judge" or "judge"), the parties received the judge's preliminary written decision granting summary judgment dismissing the entire complaint. In a letter to the judge and at oral argument, plaintiff requested the judge recuse himself pursuant to Rules 1:12-l(d) and (g), or, in the alternative, that

A-1350-20

the initial judge decide the motion. The judge denied the request.[2] Two days after argument, the judge issued his order and written decision granting summary judgment in favor of the defendants.[3]

A. <u>Recusal Request</u>

We reject plaintiff's continued contention that summary judgment should be vacated because the motion judge's refusal to recuse himself after his chambers prematurely released his draft opinion to the parties prior to oral argument on the motion violated <u>Rules</u> 1:12-1(d) and (g). <u>Rule</u> 1:12-1(d) requires a judge to be disqualified where she or he "has given an opinion upon a matter in question in the action." The motion judge's preliminary decision was based upon his assessment of the facts and law as argued in the parties' briefs, not his previous opinion on the issues raised in the contested motion.

---

[2]  The judge explained that the initial judge did not recall until after hearing argument that the case was assigned to the judge a few weeks earlier. In addition, his preliminary decision was accidentally uploaded on the e-courts as an order. The judge admitted that he had already decided the motion and detailed how, in the past, judges sent all their preliminary opinions to the parties before oral arguments so they could go into the argument knowing how the judge was thinking. They are "just too busy to do that now, so [they] have them all obviously prewritten one way or the other." Plaintiff's counsel accepted the judge's explanation, stating, "the way [y]our [h]onor, the fashion in which you addressed that, answered it, answered my questions, [j]udge, is absolutely fine and acceptable to us on our end."

A-1350-20

In addition, Rule 1:12-1(g) requires a judge to be disqualified where "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." There is no reason to "reasonably question [the judge's] impartiality," as plaintiff asserts, due to "[t]he issuance of an order and complete decision prior to the motion hearing." The customary practice to draft an opinion before argument—as explained at argument—does not bring into question the judge's partiality and objectivity. As the judge noted, the parties were made aware of his thinking prior to argument, thereby enabling them to focus their arguments on issues stressed in the preliminary opinion. As discussed below, the judge's reasoning in his ultimate written opinion evinces no hint of impartiality. And the same can be said for the draft opinion. In short, plaintiff was afforded a fair and unbiased motion hearing.

III.

Summary Judgment

We review an order granting summary judgment de novo. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 599 (App. Div. 2014). Our recitation of the facts is derived from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion,

5

viewed in the light most favorable to plaintiff, and giving plaintiff the benefit of all favorable inferences. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013). Summary judgment is granted when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The factual record before the motion judge in the light most favorable to plaintiff was as follows.

A. Plaintiff's WPD Employment

Since July 2005, plaintiff has been employed with the Watchung Police Department (WPD). In 2008, he was assigned to serve on the Somerset County Special Weapons and Tactics (SWAT) team, in addition to his regular patrolman duties. He later was named as an assistant team leader of the SWAT containment team and promoted to a SWAT entry team unit. In 2015, plaintiff was selected to serve as an acting full-time watch commander within the WPD, making him responsible for ensuring service calls were properly handled and all WPD policies and procedures were followed, as well as approving his fellow police officers' reports.

B. Plaintiff's Concerns Regarding His Treatment By Cina And The WPD

In 2009, Cina, then a WPD Lieutenant, interviewed plaintiff's brother for

6

a position with the WPD. Cina reportedly told plaintiff that he had to talk his younger brother "off the ledge" because his interview with the WPD "went horrible," which was contrary to the brother's perception and recollection of the interview. This caused plaintiff to be "uncomfortable with . . . Cina any time he had any contact with him."

In 2011, plaintiff was unsatisfied with Cina's evaluation of his 2010 job performance finding him deficient in the areas of appearance, attitude, performance, productivity, and sick time usage. Plaintiff claimed that Cina stated he was unproductive because he was not writing enough summonses. Plaintiff did not grieve the evaluation nor the performance improvement plan (PIP) he was placed on. Within four months of being placed on a PIP, Cina removed plaintiff from the PIP based on his continued improved performance.

In August 2015, plaintiff was first placed in the Guardian Tracker system by now-Chief Cina due to concerns regarding his use of sick time. He did not receive any discipline because of this entry and he received multiple commendations in the Guardian Tracker regarding his performance.

In December 2016, when concerns over his sick time reemerged, plaintiff informed Cina that he "use[d] sick time when [he was] sick or injured, and sometimes [when] doing jiu jitsu and boxing[,] [I] get injured," to which

7

Cina responded, "maybe [you] should start changing [your] off-duty activities" because they add "nothing of value" to the WPD. Cina admitted in his deposition that during multiple discussions over several years he threatened to remove plaintiff from the SWAT team if the sick time abuse continued.

In 2017, Cina removed plaintiff from the SWAT team assignment. Cina stated it was due to plaintiff's abuse of sick time. Plaintiff claimed it was because he complained about Cina's unfair treatment of him.

In April 2018, a Guardian Tracker entry was made by Lieutenant Andrew Hart stating plaintiff caused a motor vehicle accident in a patrol vehicle. Plaintiff disputed a "motor vehicle accident" occurred, claiming "technically, it wasn't a motor vehicle accident, it was a parked car."

In July 2018, plaintiff was wrongfully reprimanded by one of his supervising lieutenants, contrary to the New Jersey State Attorney General Guidelines, when he was given a written reprimand for slamming a police cruiser door on July 19.[4] Plaintiff claimed he was off duty for four days before the alleged incident and was out of work due to an injury the day of the alleged

---

[4] The reprimand referenced a March 2016 Guardian Tracker entry by Lieutenants Hart and Kelly for "slamming a police cruiser door with too much momentum" on March 7 and 15; plaintiff refuted their account.

A-1350-20

incident and two days thereafter. Plaintiff claimed that his PBA president told him that he wasn't allowed to grieve minor discipline.

On August 23, 2018, plaintiff was placed into the Early Intervention Program (EIP) for ten months for causing damage to police vehicles some years prior, although the Document Management System[5] recommended only three months of EIP.

In September 2018, plaintiff received another Guardian Tracker entry for wearing "stretchy" patrol pants that were not approved by the WPD. Plaintiff contended other officers also wore the same pants and did not receive Guardian Tracker entries. This same month, Cina denied plaintiff's request to take a "road job" before noon for extra pay because the WPD was short-staffed.

In January 2019, plaintiff was interviewed by Somerset County Prosecutor's Office investigators following his complaints against Cina and the WPD regarding improprieties within the WPD. Over the years, plaintiff complained to his sergeants that Cina was pressuring him to write more tickets and make more arrests, in violation of N.J.S.A. 40A:14-181.2(b) and N.J.S.A.

---

[5] The Document Management System is a record management program used by the WPD to maintain and document department "policies, procedures, specific orders, and all the rules that dictate how [the department] operates."

A-1350-20

2C:30-2, by threatening to remove him from the SWAT team if his "ticket numbers" did not increase.

In April 2019, Cina denied plaintiff's requests to be reinstated to the SWAT team and to attend firearms instructor school and become a field training officer. Plaintiff contends he had the necessary qualifications and years of experience.

IV.

NJCRA Claims

In dismissing plaintiff's NJCRA claims, the motion judge reasoned that plaintiff's complaints regarding Cina and the WPD to the Somerset County Prosecutor's Office were not protected speech under NJCRA and he failed to identify any specific civil rights violation. The judge reasoned:

> The First Amendment protects a public employee from freely expressing his or her views on matters of public concern. But where the expression merely involves issues of private concern such as routine disputes involving an employee and an employer, the employer is not required to tolerate actions which it could reasonably believe are disruptive to the office[] or would undermine the employer's authority or would destroy working relationships.

Plaintiff argues his NJCRA claim should not have been dismissed because "his . . . violated [rights] implicate matters of public concern and he

A-1350-20

has presented triable issues of material fact" for this claim.  Quoting Borden v. School District of East Brunswick, 523 F.3d 153, 170 (3d Cir. 2008), he maintains his complaints to the Somerset County Prosecutor's Office were matters of public concern because they "'implicat[e] the discharge of public responsibilities by an important government office, agency[,] or institution[,]'" and he "brought to light 'wrongdoing or breach of public trust' on the part of government officials."  Stressing that Cina admitted he was aware of these complaints, plaintiff states Cina took retaliatory action against him.

Plaintiff argues the motion judge erred in granting defendant Cina qualified immunity.  Citing Morillo v. Torres, 222 N.J. 104, 118 (2015), plaintiff argues the judge did not apply the proper standard of review, because he did not accept the facts as plaintiff alleged and did not view every fact and inference alleged by plaintiff in the light most favorable to him.  Plaintiff essentially argues that the motion judge "ignored that Cina's actions against [plaintiff] were taken in retaliation for [his] written and verbal objections to the Guardian Tracker entries . . . and unwarranted reprimands . . . as well as his complaints to the Somerset County Prosecutor's Office."  Plaintiff also argues the judge erred in finding Cina acted within his rights as the Chief of Police because he "engaged in a continual pattern of inexplicable, shocking

11

events that were intended to harass, abuse, and retaliate against [plaintiff]."

We conclude that viewing the facts in the light most favorable to plaintiff and as a matter of law, the motion judge properly dismissed plaintiff's NJCRA claim because plaintiff did not assert facts sufficient to establish a violation of the NJCRA.

The NJCRA in pertinent part states:

> Any person who has been deprived of . . . any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

Thus, the NJCRA provides a cause of action to any person who has been deprived of any rights under either the federal or state constitutions by a "person" acting under color of law. Ibid. It "is not a source of rights itself." Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 306 (App. Div. 2017) (citing Gormley v. Wood-El, 218 N.J. 72, 97-98 (2014)). By its terms, "[t]wo types of private claims are recognized under this statute: (1) a claim when one is 'deprived of a right,' and (2) a claim when one's rights have been 'interfered

12

with by threats, intimidation, coercion or force.'" Ibid. (quoting Felicioni v. Admin. Off. of Cts., 404 N.J. Super. 382, 400 (App. Div. 2008)).

The NJCRA, modeled after the Federal Civil Rights Act, 42 U.S.C. § 1983, affords "a remedy for the violation of substantive rights found in our State Constitution and laws." Brown v. State, 442 N.J. Super. 406, 425 (App. Div. 2015) (quoting Tumpson v. Farina, 218 N.J. 450, 474 (2014)), rev'd on other grounds, 230 N.J. 84 (2017). The NJCRA has been interpreted by our Supreme Court to be analogous to Section 1983; thus, New Jersey courts "look[] to federal jurisprudence construing [Section 1983] to formulate a workable standard for identifying a substantive right under the [NJCRA]." Harz v. Borough of Spring Lake, 234 N.J. 317, 330 (2018).

"[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." Connick v. Myers, 461 U.S. 138, 145 (1983) (quoting NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982)). "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. State of N.J., 250 F.3d 188, 194 (3d Cir. 2001). Accord Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). But the First Amendment only affords protection if the employee speaks "as a citizen on a matter of public concern." Id. at 418.

13

In Garcetti, the United States Supreme Court held that if a public employee is not speaking as a citizen, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Ibid. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.

Plaintiff failed to assert facts—as required by NJCRA—demonstrating defendants disregarded and interfered with his exercise of his constitutional free speech rights. Although speaking as a citizen and not in his official capacity as a police officer—his speech solely concerned alleged actions taken by defendants that only negatively impacted his employment. Any alleged retaliation taken against plaintiff by Cina was not due to plaintiff's exercise of free speech rights. Plaintiff did not assert that Cina's conduct affected anyone else in the WPD or the public, nor were his complaints egregious enough to warrant public notice. We therefore join the motion judge in concluding that plaintiff's complaints to the Somerset County Prosecutor's office were not protected speech under NJCRA as they related solely to his employment conditions.

Considering our conclusion that plaintiff's NJCRA's claims should be dismissed, we need not address his contention that Cina was not entitled to qualified immunity as the motion judge ruled. That said, for the sake of completeness, we agree with the judge that any claims against Cina in his official capacity should also be dismissed as duplicative of the claims against the Borough. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). And because we also agree that plaintiff failed to demonstrate Cina's alleged conduct violated his constitutional free speech rights, Cina has qualified immunity from suit. See Brown v. State, 230 N.J. 84, 98 (2017) (holding a governmental official is entitled to qualified immunity unless it is established that a clearly established constitutional right was violated).

V.

CEPA Claims

The motion judge dismissed plaintiff's CEPA claim, ruling that all alleged adverse conduct which occurred prior to August 15, 2018, was barred by CEPA's one-year statute of limitations as the suit was filed on August 15, 2019.

As for the merits of the claim, the judge ruled plaintiff did not engage in any whistle-blowing activity. He decided:

15

[N]one of [Cina's] purported conduct suggests that at any time [p]laintiff believed he was required to participate in illegal activity. As such, there are no allegations made by [p]laintiff that [he] refused to participate in or objected to participation in any alleged illegal activity. Accordingly, the [c]ourt will evaluate whether any of the [p]laintiff's allegations amount to whistle[-]blowing activities by disclosing or threatening to disclose unlawful conduct.

. . . .

The [c]ourt finds that [p]laintiff's allegations amount to nothing more than routine workplace disputes about internal policy and management style. Accordingly, none of the [p]laintiff's allegations amount to whistle[-]blowing activity under CEPA. While [p]laintiff claims that he made a complaint about . . . Cina to the Somerset County Prosecutor's Office in 2019, he has not presented any testimony or documentary evidence to show that this complaint was based on anything more than workplace grievances. Accordingly, this also does not constitute whistle[-]blowing activity under CEPA.

For completeness, the judge addressed and rejected defendants' argument that the NJCRA claim was subsumed under CEPA's waiver provision because the claim alleged the same set of operative facts of his CEPA claim and plaintiff did not differentiate between the facts supporting the respective claims. The judge explained:

Plaintiff's NJCRA claim is based on his claims that he voiced objections or concerns regarding practices and treatment by his employer, and as a result of his

16

speech, he was retaliated against. This is the identical argument [p]laintiff makes in support of his CEPA claim, and therefore it is subsumed.

Plaintiff contends the judge erred in finding his CEPA claim was untimely filed because he misclassified Cina's pattern of conduct over the years as "discrete acts," and incorrectly found that the only conduct that fell within CEPA's statute of limitation period was the 2019 denials of plaintiff's attempts to be reinstated onto the SWAT Team and promoted to Sergeant. By glossing over Cina's engaged continual pattern of unlawful conduct over the course of years that created a hostile work environment, plaintiff, citing Shepherd v. Hunterdon Development Center, 174 N.J. 1, 19 (2002), asserts the judge "ignore[d] that hostile work environments are created by repeated unlawful conduct over a period of time in direct contrast to discrete acts, which consist of single acts."

Plaintiff specifically points to Cina's engagement in an "unrelenting stream/barrage of unequivocal and wide-ranging lies included bogus disciplinary charges to cover up his true retaliatory motives." Plaintiff maintains that the "mischaracterization of his sick time usage," the "conflated reports of incidents involving damage to police vehicles," as well as Cina

singling plaintiff out in a group and reprimanding him for wearing "stretchy" patrol pants was all pretext for his retaliation.

Moreover, plaintiff claims the motion judge did not review and consider the certification of WPD officer Richard Lyons "impartially" or "in the light most favorable to [plaintiff]." Lyons, who had previously sued and settled a lawsuit against the WPD over Cina's treatment, certified that plaintiff complained numerous times over the course of years about Cina to co-workers, that Cina "had it out for" plaintiff, and he reiterated the examples of "abuse and retaliation" plaintiff asserted in his complaint and appeal. Plaintiff further challenges the motion judge's the characterization of the certification as "an attempt to resurrect or bolster [plaintiff's] claims" with "merely self-serving assertions that are not based upon any personal knowledge." Instead, he insists Lyon's certification corroborates his CEPA claim by "providing precise and detailed examples of Cina's incessant adverse actions against [plaintiff]." Plaintiff, therefore, maintains that the continuing violation doctrine should have been applied to his CEPA claim.

To establish a prima facie case under CEPA, a plaintiff must prove:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

A-1350-20

(2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

"The evidentiary burden at the prima facie stage is 'rather modest . . . .'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)). Once a plaintiff establishes the four CEPA elements, the burden shifts to the defendant to "advance a legitimate, nondiscriminatory reason for the adverse conduct against the employee." Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005). "If such reasons are proffered, plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39.

CEPA prohibits employers from retaliating against an employee who:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of

19

the employer . . . that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or

(2) is fraudulent or criminal . . . ;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . . . ; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

(2) is fraudulent or criminal . . . ; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

CEPA was enacted to prevent retaliatory action when an employee blows the whistle on improper activities, "not to assuage egos or settle internal disputes at the workplace." Klein, 377 N.J. Super. at 45. CEPA defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other

adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).

Generally, a plaintiff has one year from the occurrence of the retaliation to file an action under CEPA. N.J.S.A. 34:19-5. Retaliatory actions can be a single discrete action, like the failure to promote, or a hostile work environment, which consists of "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003).

The limitations period, however, is subject to an equitable exception for continuing violations. Roa v. Roa, 200 N.J. 555, 566 (2010). The continuing violation doctrine is "a judicially created doctrine . . . [that] has developed as an equitable exception to the statute of limitations." Bollinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000). Under the continuing violation doctrine, which applies to CEPA claims, Green, 177 N.J. at 446-49, "a plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Shepherd v.

21

Hunterdon Dev. Ctr., 174 N.J. 1, 6-7 (2002) (citing West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995)).

In Shepherd, the Court highlighted the difference between a hostile work environment claim that falls within the continuing violation doctrine and a claim based on a discrete act that does not. 174 N.J. at 19-20.

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative [e]ffect of individual acts.
>
> . . . .
>
> . . . A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.
>
> That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however,

22

may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

[Ibid. (quoting AMTRAK v. Morgan, 536 U.S. 101, 115-17 (2002)).]

The Court adopted the following two-prong test:

First, have plaintiffs alleged one or more discrete acts of discriminatory conduct by defendants? If yes, then their cause of action would have accrued on the day on which those individual acts occurred. Second, have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment? If yes, then their cause of action would have accrued on the date on which the last act occurred, notwithstanding "that some of the component acts of the hostile work environment [have fallen] outside the statutory time period."

[Id. at 21 (alteration in original) (quoting Morgan, 536 U.S. at 117).]

A. Timeliness of Some CEPA Claims

In the present matter, all of plaintiff's claims constitute discrete acts which cannot be aggregated; therefore, the motion judge properly limited his claims to those after August 25, 2018. The facts do not indicate a pattern of violations that were "continuous, cumulative, [or] synergistic." Wilson v. Wal-Mart Stores, 158 N.J. 263, 273 (1999). Most of plaintiff's claims

23

occurred sporadically over the course of a decade, and, when viewed cumulatively, they do not suggest a hostile work environment.

First, plaintiff only provided one negative performance review from 2010 and one PIP in 2011, which constitute discrete actions. As to the allegations that plaintiff was misusing sick time, this was first alleged in the 2010 review and plaintiff did not get another similar warning until 2015 when an entry was made in the Guardian Tracker. This occurred five years after the first allegation and two years after the implementation of Guardian Tracker. This was also plaintiff's first entry in the system. Five years without any issues does not speak to a pattern of continued violations.

Plaintiff contends he was improperly removed from the SWAT team in 2017, and plaintiff admits he did not suffer any other disciplinary action that year. In 2018, plaintiff was placed on EIP and received a written reprimand; however, that still did not establish a pattern of violations, as it was only two times for separate purposes. These all constitute discrete employment actions, which are not continuing violations to be aggregated to revive an untimely claim. Thus, summary judgment dismissal of plaintiff's CEPA claims occurring before August 25, 2018, was proper because they were not timely filed.

24

B. <u>Merits of CEPA Claims</u>

Turning to plaintiff's CEPA claims occurring after August 25, 2018—the denials of his request for reinstatement to the SWAT team, for promotion to sergeant and of his 2019 request to attend firearm training—that were dismissed on their merits, plaintiff argues the motion judge erred because, like his NJCRA claim, he provided "ample factual proof supporting his cause of action or, at a minimum, raising genuine factual issues that . . . precluded a grant of summary judgment" in favor of defendants. He contends that pursuant to N.J.S.A. 34:19-3(a)-(c) and <u>Dzwonar</u>, 177 N.J. at 462, he does not have to show that the employer actually violated the law, rule, regulation, or other authority that he relies upon. Instead, he need only "demonstrate that he . . . reasonably believed that a violation occurred" about which he complained.

Plaintiff asserts his "whistle-blowing" activity under N.J.S.A. 34:19-3(a)(1) occurred when he reported his allegations of mistreatment and unlawful conduct by Cina to the Somerset County Prosecutor's Office. He contended at the motion hearing that Cina's threats to fire him if he didn't write more tickets constituted official misconduct, N.J.S.A. 2C:30-2, and a violation of N.J.S.A. 40A:14-181.2(b), which prohibits "us[ing] the number of . . . citations . . . as the sole criterion for promotion, demotion, dismissal, or the

earning of any benefit provided by the department or force." Plaintiff maintains that Cina fabricated disciplinary charges "to place him on a PIP" in the effort to "derail [plaintiff's] promotional opportunities, ruin his career, and ultimately force him out of the WPD in retaliation for [p]laintiff's persistent objections to Cina's false accusations about his job performance and the complaints he made about Cina to superiors." He argues that his complaints encompassed more than mere routine workplace disputes or grievances, and, therefore, the summary judgment motion should have been denied.

Citing Estate of Roach v. TRW, Inc., 164 N.J. 598 (2000) and Higgins v. Pascack Valley Hospital, 158 N.J. 404 (1999), plaintiff further argues that even if his allegations merely concern internal workplace policies and procedures, CEPA's public policy prong still encompasses internal complaints on employer policies. Contending CEPA claims are liberally construed in view of the remedial nature of the statute, Dzwonar, 177 N.J. at 461, in addition to "the fact-sensitive nature of retaliation claims," plaintiff claims the summary judgement motion should have been denied based on the evidence presented which included contested issues of fact.

Even though we liberally construe CEPA claims in view of the remedial nature of the statute, Dzwonar, 177 N.J. at 461, our close and careful review of

26

the factual record and our summary judgment principles compels us to conclude that defendant's CEPA claims, before and after August 25, 2018, were correctly dismissed on summary judgment. As noted above, plaintiff's complaints addressed his personal job disputes with Cina and the WPD. There is no indication that his complaints to the Prosecutor's Office were anything other than an effort bring light to his belief that he was denied employment opportunities and unfairly disciplined. His allegation that defendants violated N.J.S.A. 40A:14-181.2(b) by disciplining him for not writing enough tickets speaks to his employment complaint that he was unfairly disciplined.

Because we conclude plaintiff did not engage in any whistle-blowing activity, we need not address whether he suffered any adverse employment action.

VI.

Punitive Damages Claim

Punitive damages are awarded to ensure "deterrence of egregious misconduct and the punishment of the offender." Longo v. Pleasure Prods., Inc., 215 N.J. 48, 57-58 (2013) (quoting Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 337 (1993)). They are allowable only if

> the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's

acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

[N.J.S.A. 2A:15-5.12.]

Plaintiff argues the motion judge erred in dismissing his CEPA claim for punitive damages given there are genuinely disputed issues of fact. We disagree. Because we conclude summary judgment dismissal of his CEPA claim was appropriate, plaintiff has no viable damages claim let alone one for punitive damges.

Any arguments made by defendant that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1350-20